773 F.2d 1128
 UNITED STATES of America, Plaintiff-Appellant,
v.
Richard Taylor CARDALL, Joseph A. Holman, Barry Crowther,
Kenyon V. Blackmore, Richard Thiriot Cardall, David Lon
Ashby, Glen L. Wright, Stanley L. Willmitt, Gean Cannon,
Eric W. Bjorklund, Gerald L. Turner, and Farrell Anderson,
Defendants-Appellees.
 No. 84-2320.
 United States Court of Appeals,
Tenth Circuit.
 Sept. 25, 1985.
 
 Louis M. Fischer, Atty., Dept. of Justice, Washington, D.C. (Brent D. Ward, U.S. Atty., Samuel Alba and Stewart C. Walz, Asst. U.S. Attys., Salt Lake City, Utah, with him on brief), for plaintiff-appellant.
 Timothy C. Houpt, Houpt & Eckersley, Salt Lake City, Utah, for defendants-appellees Wright and Bjorklund.
 Martin Verhoef, Salt Lake City, Utah, for defendants-appellees Holman and Ashby.
 Edwin F. Guyon, Salt Lake City, Utah, for defendants-appellees Anderson, Blackmore, and Cannon.
 Before BARRETT and MOORE, Circuit Judges, and BRETT, District Judge.*
 JOHN P. MOORE, Circuit Judge.
 
 
 1
 This is an appeal from orders suppressing certain evidence upon findings that government agents violated defendants' Fourth Amendment rights, as well as upon findings that provisions of 18 U.S.C. Sec. 2517 restricting disclosure of evidence obtained by wire interception were violated. The government has appealed, contending the trial court failed to properly consider the "good faith" rule relating to seized evidence and that the trial court improperly construed the restriction on disclosure. Appellees-defendants contest the propriety of this appeal, contending it was not timely taken. We hold the appeal is timely, and we reverse the judgment of the trial court on the merits.
 
 I.
 
 2
 The seminal question is whether we have jurisdiction in this appeal. The issue arises because the government filed successive motions in the trial court seeking reconsideration of that court's initial order on defendants' suppression motions. After the district court entered its first suppression order on March 14, 1984, the government filed its first motion for reconsideration on April 12, contending the court should consider a good faith exception to the exclusionary rule imposed by the court. This motion was denied, after reconsideration, on June 7, 1984. While the government was preparing its notice of appeal from the second order, the Supreme Court decided United States v. Leon, --- U.S. ----, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), on July 5, 1984. The decision apparently prompted the prosecutor to contact the district judge to advise him of the pendency of the appeal and of the Leon decision. During an ensuing ex parte conversation, the judge suggested the government defer the appeal and file a second motion for reconsideration in light of Leon. The second motion was filed on July 9, 1984, the last day for filing the notice of appeal from the June order. (There was an intervening weekend.)
 
 
 3
 After reconsideration of the good faith issue raised in the second motion, the court concluded the Leon good faith rule was inapplicable and adhered to its prior ruling. The government filed its notice of appeal within 30 days of the entry of this last order.
 
 
 4
 The question now before us is whether the filing of the second motion for reconsideration tolled the time for filing the notice of appeal. While conceding the filing of the first motion for reconsideration had that effect, United States v. Dieter, 429 U.S. 6, 97 S.Ct. 18, 50 L.Ed.2d 8 (1976), defendants contend the second motion was not similarly effective. In support of that argument, defendants rely upon United States v. Martinez, 681 F.2d 1248 (10th Cir.1982). In that case, we held that the filing of a motion to reconsider a suppression order filed by the government within 30 days of the entry of that order tolled the 30-day time limit for an appeal by the government under 18 U.S.C. Sec. 3731. Defendants argue that the order appealed from (presumably the first order, and not the subsequent orders denying applicability of a good faith rule) was more than 30 days from the filing of the second motion for reconsideration, thus invalidating this appeal.
 
 
 5
 Defendants suggest that the government should have proceeded in accordance with the route followed in Garcia v. Regents of the University of California, 737 F.2d 889 (10th Cir.1984). In that case, the appellant had obtained reconsideration of an order but wished to raise another issue; hence a notice of appeal was filed, and this court was asked to grant a limited remand to consider the new issue. The government concedes this procedure would have obviated the question now before us, but it contends failure to follow the wiser route does not vitiate its attempt to gain review. We agree.
 
 
 6
 We regard this as an unusual case; therefore, we limit our holding to its particular circumstances. Initially, it must be noted that we do not, by finding jurisdiction in this case, countenance the filing of repetitious motions seeking reconsideration in the trial court as an avenue to extending appeal rights. Indeed, we have already noted the ineffectiveness of such a tactic. United States v. Marsh, 700 F.2d 1322 (10th Cir.1983). There we held that successive motions raising the same issues did not toll the time for filing a notice of appeal. Yet, here the government is not seeking to raise the same issue in its second motion for rehearing.
 
 
 7
 No one can seriously contend that the second motion did not deal with the question of applying a good faith rule to the seizure of evidence pursuant to a warrant, but reason dictates that we look not to the generic nomenclature of a pleading but to its substance to determine whether it is a repetitive motion in the context of the tolling issue. Facially, the government's second motion had the earmarks of redundancy, but it is obvious its intent was to raise an issue not previously considered. Moreover, it is patent that the impetus behind this second motion was a decision of the Supreme Court that was not in existence when the trial court's previous ruling was made. The last motion did not seek to repeat a position previously taken, and the notice of appeal was timely in the context of Martinez, supra.
 
 
 8
 There is also a practical consideration to be given this case. The trial judge was evidently concerned whether Leon effectively negated his prior ruling in such a way that an appeal would have resulted in a remand for his consideration of the Leon issue. His perception of judicial economy correctly indicated the wise course of deferring an appeal until he had time to reconsider the issue so that this court could properly review the matter in its full context. We not only approve but also applaud that practical approach, and we will not consider it a hindrance to our jurisdiction.[1] See United States v. Jones, 608 F.2d 386 (9th Cir.1978).
 
 II.
 
 9
 Having concluded the case is properly before us, we now turn to the merits. Defendants were charged by indictment with the crimes of wire and mail fraud, interstate transportation of money taken by fraud, bankruptcy fraud, and racketeering. The charges arose from allegations that the defendants were involved in a "Ponzi scheme" in which they promised investors a 96% annual return on their investments in certain accounts payable factoring companies. The indictment alleged the defendants had defrauded investors in 38 states and consequently obtained more than $15.6 million.
 
 
 10
 Prior to trial, defendants moved to suppress evidence seized by warrant from several business enterprises under their control. After an evidentiary hearing, the motions were granted in part. The court found the affidavit filed in support of the warrant disclosed sufficient probable cause to support a search for evidence of bankruptcy fraud, but it held the affidavit lacked probable cause for any other offense. Additionally, the court concluded agents who conducted the search exceeded the scope of the warrants. Accordingly, the court suppressed all evidence relating to the other indicted offenses.
 
 A.
 
 11
 The first question we must consider is whether the affidavit is fatally defective as found by the trial court. We conclude that it is not. We judge the affidavit in the context of Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2713, 76 L.Ed.2d 527 (1983).
 
 
 12
 We are constrained to observe the affidavit here is far from that kind of document that could have been produced by a lawyer after careful consideration of all the facts known to the investigating agents at the time the warrant was sought. Indeed, we judge this affidavit to be just what the Supreme Court had in mind when it said that affidavits "are normally drafted by nonlawyers in the midst and haste of a criminal investigation." United States v. Ventresca, 380 U.S. 102, 108, 85 S.Ct. 741, 745, 13 L.Ed.2d 684 (1965). In reviewing the constitutional sufficiency of such affidavits, the Court continued: "Technical requirements of elaborate specificity once exacted under common law pleading have no proper place in this area." Id. Hence, in Illinois v. Gates, supra, the Court concluded "the after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of a de novo review." Gates, supra, 103 S.Ct. at 2331. The Court accordingly reaffirmed the "common sense" approach to the interpretation of search warrant affidavits in determining their constitutional sufficiency. Thus, a magistrate must make a practical determination, upon all the circumstances set forth in the warrant, whether there is a fair probability that evidence of a crime will be found in a particular place. Gates, supra; United States v. Berisford, 750 F.2d 57 (10th Cir.1984).
 
 
 13
 The affidavit in this case was hurriedly prepared by Loren Brooks, an agent of the FBI, who had been leading an investigation of the defendants for approximately six months prior to the search.[2] Some of the information used in the affidavit was gleaned from evidence obtained by Brooks in a previously authorized wire interception at the defendants' premises. As a consequence of what had been overheard in one of these interceptions, Brooks believed the defendants were setting out to dispose of evidence; hence the exigency in applying for the search warrant.
 
 
 14
 In the affidavit, Brooks set forth the fact of his investigation and his belief, born of the investigation, that the defendants were involved in a scheme to defraud. He amplified this belief by recounting interviews with "investors and sales agents involved" with the defendants' efforts. He recounted an analysis of bank records, which Brooks stated indicated that 1,500 investors gave defendants at least $1,000 each to invest in defendants' entities in response to representations that they would receive 96% per annum on their investments and that the money would be used to factor accounts payable of other businesses. The affidavit then stated that the investigation "failed to reveal a business which is factoring its accounts through [defendants'] entities." These statements established the extent of the representations made by the defendants. When coupled with the results of the investigation, the affidavit tended to support Brooks' conclusion that the representations were fraudulent.
 
 
 15
 Brooks then stated that his training and experience, including 23 years of investigating "white collar crime," led him to believe the defendants were conducting a "Ponzi scheme" in which money was solicited from new investors to pay the profits promised to old investors. This assertion was supported by a representation that two named investors were interviewed, and they reported they had not been paid their promised monthly interest checks for the previous month. There followed assertions that bankruptcy petitions were filed by certain of defendants' entities indicating debts in excess of $8 million. Specific statements also were made regarding the existence of particularized evidence which Brooks sought to seize and of the use of the mails by defendants' entities.
 
 
 16
 Judged in the light of the common sense review mandated by Gates, we believe the affidavit was sufficient to show probable cause. See United States v. Berisford, supra. If one were to take each statement alone and separately examine it for sufficiency, as did the trial court, the affidavit would fail the test; but taking the affidavit as a whole, as Gates requires, there is enough presented to justify a conclusion that the defendants were involved in the crimes asserted.
 
 B.
 
 17
 Apart from that conclusion, the good faith rule established in United States v. Leon, supra, mandates reversal of the suppression orders. The district court held the agents were not entitled to a good faith exception because they knew or should have known the affidavit submitted by Brooks was invalid. The conclusion is logically reasoned, but it is wholly dependent upon the corollary that the affidavit was lacking in probable cause. Since we have found to the contrary, it must follow the syllogism perceived by the trial court is no longer logical. Nevertheless, another sound reason exists for reversal.
 
 
 18
 We believe Leon has established for judicial consideration a framework for judging law enforcement activity which leads to a more precise application of the exclusionary rule.[3] Leon balances individual rights with the equally important right of the public to bring to justice those who transgress the law. The balancing is predicated upon the concern that "indiscriminate application of the exclusionary rule ... may well 'generat[e] disrespect for the law and the administration of justice.' " Leon, supra, 104 S.Ct. at 3413 (quoting Stone v. Powell, 428 U.S. 465, 491, 96 S.Ct. 3037, 3051, 49 L.Ed.2d 1067 (1976) ). As a consequence of this concern, the Court has mandated restraint upon exclusion of evidence to the end that evidence be suppressed "only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." [Deterrence of unlawful police conduct.] Leon, supra, 104 S.Ct. at 3419. To reach that end, the Court has instructed:
 
 
 19
 Suppression therefore remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth.... The exception we recognize today will also not apply in cases where the issuing magistrate wholly abandoned his judicial role; ... in such circumstances, no reasonably well-trained officer should rely on the warrant. Nor would an officer manifest objective good faith in relying on a warrant based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."
 
 
 20
 104 S.Ct. at 3421-3422. We do not here have a case in which the magistrate was misled, nor do we have any indication that the affidavit contained false information. While it is suggested the magistrate abandoned his impartial role in granting the warrant, that suggestion is based upon the conclusion the warrant was insufficient--a view with which we have already dispensed. Thus, these exceptions to the Leon rule are inapposite.
 
 
 21
 What is left is whether agent Brooks and his fellow officers should have perceived the supporting affidavit was so conclusory that their good faith reliance upon the warrant is obviated. Although the trial court reached this conclusion, we believe doing so simply sidesteps the underlying reasons for the Leon rule itself.
 
 
 22
 The first notion to be remembered in considering the good faith principle is the presumption created in Leon that when an officer relies upon a warrant, the officer is acting in good faith. Leon, supra, 104 S.Ct. at 3422. While this presumption is not an absolute, it must carry some weight. Second, it must also be remembered that the knowledge and understanding of law enforcement officers and their appreciation for constitutional intricacies are not to be judged by the standards applicable to lawyers.
 
 
 23
 When we consider whether the officer relied in good faith upon a warrant, we must look to the underlying documents to see whether they are devoid of factual support, not merely whether the facts they contain are legally sufficient. When a warrant has issued, the legal sufficiency of the underlying affidavit has already been determined by the magistrate, and the magistrate's determination is entitled to credence. Illinois v. Gates, supra; United States v. Leon, supra. Courts cannot make the good faith of an officer turn upon whether his reliance on a warrant was misplaced. It is only when the reliance was wholly unwarranted that good faith is absent.
 
 
 24
 In this case, the affidavit was not devoid of factual support for the warrant. Indeed, we have found the warrant legally sufficient. Absent that finding, the affidavit was sufficient on its face to justify an experienced agent's belief that probable cause had been determined by an impartial magistrate. Accordingly, the subsequent searches were carried out in good faith.
 
 C.
 
 25
 It should follow from the foregoing conclusions that the scope of the searches was not overbroad. Since the trial court had found the affidavits were sufficient to support probable cause only for the crime of bankruptcy fraud, it logically concluded searches for evidence of any other offense were beyond the scope of the warrants. Since the logic employed is not apposite, the trial court's ruling must be set aside.
 
 III.
 
 26
 The final question is whether testimony given before the grand jury in violation of 18 U.S.C. Sec. 2517(5) should be sanctioned by the suppression of the evidence at the time of trial. We conclude there is no foundation for the suppression order.
 
 
 27
 At some time prior to the execution of the search warrants, the government obtained an order permitting wire interceptions at the defendants' premises. During the course of those interceptions, agents heard communications leading them to conclude the defendants were engaged in the offense of bankruptcy fraud. Although that offense was not included in the order authorizing the interceptions, the intercepted evidence was presented in testimony to the grand jury. The indictment charging the bankruptcy offense was subsequently returned.
 
 
 28
 Defendants moved to dismiss the indictment on the grounds the testimony violated Sec. 2517(5). Although the impropriety of the disclosure was admitted by the government, it argued the remedy was not dismissal.
 
 
 29
 In a thorough and scholarly review of the statute and precedents emanating therefrom, the trial court concluded the sanction of dismissal was not appropriate. With that conclusion we heartily agree for the precise reasons cited by the district court. By the same measure, however, we disagree with the conclusion that the sanction of suppression was available as a cure for the admitted violation of the disclosure requirements of Sec. 2517(5).
 
 
 30
 A careful review of the wiretap statute, 18 U.S.C. Secs. 2510-2520, discloses the sanction of suppression is limited only to cases in which the government has illegally intercepted evidence. See 18 U.S.C. Sec. 2518(10); United States v. Horton, 601 F.2d 319 (7th Cir.), cert. denied, 444 U.S. 937, 100 S.Ct. 287, 62 L.Ed.2d 197 (1979); Fleming v. United States, 547 F.2d 872 (5th Cir.), cert. denied, 434 U.S. 831, 98 S.Ct. 113, 54 L.Ed.2d 90 (1977); United States v. Vento, 533 F.2d 838 (3rd Cir.1976). Here there is no question that the evidence was legally intercepted; thus the conditions upon which the sanction of suppression could be invoked are not present.
 
 
 31
 Congress has not left the aggrieved party without sanctions, however.[4] The remedy is found in 18 U.S.C. Sec. 2520, which states:
 
 
 32
 Any person whose wire ... communication is ... disclosed ... in violation of this chapter shall (1) have a civil cause of action against any person who ... discloses ... such communications, and (2) be entitled to recover from any such person ... actual damages; ... punitive damages; and ... a reasonable attorney's fee and other litigation costs reasonably incurred.
 
 
 33
 This remedy which the Congress has established must be viewed as the only sanction against illegal disclosure of intercepted communications available to the aggrieved party. An analogous situation is presented by the question of available sanctions for unauthorized disclosure of grand jury material in violation of Fed.R.Crim.P. 6(e). Ordinarily, the secrecy rule is enforced by the sanction specifically provided in the rule--punishment for contempt of court. United States v. Stone, 633 F.2d 1272 (9th Cir.1979); In re Grand Jury Investigation, 610 F.2d 202 (5th Cir.1980); United States v. Malatesta, 583 F.2d 748 (5th Cir.1978), modified on other grounds, 590 F.2d 1379 (en banc), cert. denied, 440 U.S. 962, 99 S.Ct. 1508, 59 L.Ed.2d 777 (1979); United States v. Thompson, 576 F.2d 784 (9th Cir.1978). There is simply no statutory basis for the suppression of evidence lawfully obtained; the attempt to do so is a nullity, and an injured party must look to an action in damages for compensation. United States v. Vento, supra.
 
 
 34
 The judgment of the district court suppressing evidence is reversed, and this case is remanded.
 
 
 
 *
 Honorable Thomas R. Brett, District Judge, Northern District of Oklahoma, sitting by designation
 
 
 [1]
 With this conclusion, we shall not pursue the question of which order is really on appeal. While that question might lead to a more esoteric discussion than what has preceded, we favor the practical result and will let the matter rest
 
 
 [2]
 Actually, there were three separate searches, but because we treat the legal issues identically, we treat these searches as one
 
 
 [3]
 Indeed, Leon presents us with no new principles regarding probable cause. What it deals with is a new way of considering the means of enforcing Fourth Amendment rights
 
 
 [4]
 We do not imply the sanctions should lie in this case. That is a matter to be decided in separate proceedings, and reference to the remedy here should not be regarded as indicative of a determination by us of the merits of the individual remedies