**UNITED STATES of America, Plaintiff,**

v.

**Steven Hunt GRABOW, Defendant.**

**Crim. No. 84–CR–333.**

United States District Court,
.D. Colorado.

Aug. 28, 1985.

On Motion for Reconsideration
Nov. 13, 1985.

As Amended Nov. 19, 1985.

John O. Martin, Task Force Coordinator, Mountain States Drug Task Force, Dawn Bowen, Asst. U.S. Atty., Denver, Colo., for plaintiff.

Joseph Saint-Veltri, Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

MATSCH, District Judge.

The investigation resulting in the indictment which initiated this criminal prosecution included electronic surveillance authorized by court orders entered by Chief Judge Sherman G. Finesilver pursuant to 18 U.S.C. § 2518. There were four orders on applications made by Assistant U.S. Attorney John O. Martin, and each order was based on a joint affidavit of Stephen F. Barnhill, a Denver Police Department detective assigned to the Drug Enforcement Administration Task Force, and Special Agent Clifton Browning, Jr., of the Federal Bureau of Investigation, who is now deceased.

The first order was entered on November 10, 1983 (Exhibit 1C) for interception of the oral communications of Steven Hunt Grabow ("Grabow") and other persons at 0016 McSkimming Road, Pitkin County, Colorado, the home of Grabow, and at 355 North Mill Street, Apartment 313, Aspen, Colorado, the apartment of David G. Word. The same order permitted the interception of wire communications of the same individuals over telephone numbers 303-925-5799, subscribed to by Grabow at 0016 McSkimming Road, 303-925-9595, subscribed to by Word at 355 N. Mill Street, and 303-920-1177, subscribed to by David Foster at 437 West Smuggler, Aspen, Colorado.

A second order (Exhibit 2C) was entered on December 9, 1983. It authorized the interception of oral communications occurring at 0016 McSkimming Road, and wire communications from the 303-925-5799 and 303-920-1177 numbers. In addition, this order permitted the interception of wire communications from 303-925-9242, which was at that time subscribed to by Word, 355 N. Mill Street. This second order added additional persons, some of them identified only by first name, as interceptees.

The third order (Exhibit 3C) was entered December 13, 1983, permitting the interception of oral communications at 437 West Smuggler, the residence of Foster, who was the only named individual whose communications were to be intercepted under that authorization.

A fourth order (Exhibit 4C) was entered on January 9, 1984 for the interceptions of both wire and oral communications occurring at 0016 McSkimming Road, and telephone numbers 303-925-5799 and 303-920-1177. Additional individuals were named interceptees in this fourth order, again some of them being identified only by first names.

The actual monitoring of the oral communications at the Grabow residence did not begin until December 1, 1983 because of technical difficulties in establishing and operating the necessary equipment. The interception of the communications on Word's telephone at number 303-925-9595 was interrupted from December 7, 1983 to December 9, 1983 because of a change in his telephone number. Monitoring of conversations of the telephones of Grabow and Foster and at the Grabow residence was terminated on January 8, 1984 because of the expiration of the authorizing order entered on December 9, 1983. It was re-

sumed under the January 9, 1984 order. Monitoring of conversations over Word's second telephone number was terminated on January 6, 1984 because of the disconnection of the telephone at Word's request. The monitoring of oral communications at Foster's residence ceased on January 12, 1984, and on January 30, 1984, monitoring over the telephones of Grabow and Foster and at Grabow's residence also terminated.

The defendant has filed a number of motions attacking this investigation and seeking suppression of evidence on several grounds. Evidentiary hearings were held on these motions for several days, beginning April 10, 1985. The defendant seeks further evidentiary inquiry under *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), and the parties have filed substantial briefs and affidavits with respect to that and other questions. The government, in its brief filed on May 6, 1985, advised as follows:

> The government does not intend to use as evidence in its case in chief any conversations obtained as a result of the interception of oral communications at any location or any of the conversations intercepted over the telephone of David Word. In short, only conversations intercepted over the telephones of Steven Grabow and David Foster will be used at trial, and none of those conversations were the result of the last interception order (Exhibit C) signed on January 9, 1984.

While that limitation has significance, it is necessary to examine the validity of all of the four orders because information obtained from the oral interceptions and wire communications were used in affidavits for search warants at various locations and because information obtained from the first interceptions were used in the affidavits for later orders.

In *Franks v. Delaware, supra,* the Supreme Court held that if a defendant establishes by a preponderance of the evidence that false statements were used to establish probable cause for a search warrant, the warrant must be voided and the fruits

of the search excluded from the trial if the false information was provided knowingly and intentionally, or with reckless disregard for the truth. The voiding of the warrant is compelled by the Fourth Amendment to the United States Constitution just as would be the case if probable cause was lacking on the face of the affidavit.

The parties are in agreement concerning the applicability of the *Franks* doctrine to orders authorizing electronic surveillance, but disagree concerning the adequacy of the showing which has been made to date. In *Franks,* the Court gave the following guidance for the procedure to be followed in implementing the rule:

> There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.

*Id* at 171, 98 S.Ct. at 2684.

Because one of the affiants is now deceased, it seems prudent to approach the *Franks* issue by considering whether the deletion of the material which is claimed to be erroneous would affect the probable cause determinations. If not, no purpose would be served by any further inquiry into whether any error or omission was intentional or resulted from a reckless disregard for accuracy. Obviously, it is diffi-

cult to make determinations of subjective intent of a deceased person. Such an approach is substantially similar to that taken by the Oregon Supreme Court in *State v. Harp,* 299 Or. 1, 697 P.2d 548 (1985), following state law.

The first question, of course, is whether the affidavits, taken as a whole, establish probable cause with respect to the requirements of 18 U.S.C. § 2518(3)(a) through (d). The determinations of Chief Judge Finesilver are entitled to deference. *United States v. Belcastro,* 84–CR–290 slip op. at 6 (D.Colo. Feb. 5, 1985) (Judge Moore). *See also, United States v. Martino,* 664 F.2d 860 (2d Cir.1981), *cert. denied,* 458 U.S. 1110, 102 S.Ct. 3493, 73 L.Ed.2d 1373 (1982); *Edmondson v. United States,* 402 F.2d 809 (10th Cir.1968). Although the defendant Grabow has standing only to attack the sufficiency of the affidavits which relate to interceptions which affect his residence, his telephone and his communications, the interrelationship of the affidavits and orders are sufficient to cause the court to consider all of the affidavits and all of the orders. Taken at face value and considering the affidavit filed in support of the November 10, 1983 order, this court finds and concludes that probable cause was established for all of the necessary statutory elements.

The appropriate standard for measuring adequacy of the affidavits is, admittedly, *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)—the "totality of the circumstances." The information provided in the first and subsequent affidavits was gathered from telephone toll and subscriber information, pen registers, surveillance reports, confidential informant interviews, and confessions and convictions in other criminal proceedings, seizures of physical evidence, grand jury testimony from another investigation in another jurisdiction, undercover investigations and other recognizable investigative techniques. There is a sufficient basis for inferring that it was probable that the subjects of the electronic surveillance were engaged in an extensive conspiracy of the "hub and spoke" variety ranging over significant amounts of time and space, and using sophisticated techniques to avoid discovery.

■ The affiants clearly engaged in one deception. They made it appear that Confidential Informant # 3 and Rollins Snelling were two different people. In fact, Snelling was CI# 3, and that fact was known to both affiants but not known to Chief Judge Finesilver. The motivation that this was done to protect this confidential informant is irrelevant in the present analysis. The question is whether the disclosure of the common identity would affect a probable cause finding. I hold that it would not. In reaching this determination, I am persuaded that the information provided in the affidavit shows a sufficient probability that Snelling was in a position to provide accurate information, and it follows that CI# 3 was also in a position to know what was attributed to him. In other words, to test the effect of the deception, it is appropriate not to delete the paragraphs where they appear to be separate individuals, but reread those paragraphs using the name Snelling wherever CI# 3 is described as the source of the information. For example, in the paragraph at the top of page 13 of Exhibit 1B, the information attributed to CI# 3 would be even more credible if it had been attributed directly to Rollins Snelling because the information concerned his activities and his telephoning. Likewise, paragraphs 27–33 become more credible if reread to attribute the information directly to Snelling rather than the undisclosed informant because from the other information provided, Snelling has more reason to know and, therefore, be able to report on these matters.

The government cites *United States v. Strini,* 658 F.2d 593 (8th Cir.1981) for the legal proposition that the misidentification of a confidential informant in this matter does not constitute a false statement within the contemplation of *Franks.* Under the analysis used in this case, it is not necessary to make that legal conclusion but if that is the law, then, of course, it follows

that this deception has no legal significance.

The defendant has challenged the accuracy of other information provided in the original and subsequent affidavits and has also asserted that information was omitted from them, and has submitted affidavits as offers of proof. The government has countered these allegations with other affidavits, transcripts of sworn testimony, investigative reports and exhibits to show bases for belief in the accuracy of the information provided. The resolution of this conflict can, again, be determined in two steps. First, if the challenged material is deleted, what is the effect on the required probable cause findings? Again, it is my finding that if the challenged material is deleted, probable cause has still been shown.

The second step would be an inquiry into whether the claimed inaccuracies resulted from an intent to falsify, or a reckless disregard for the truth. Considering the material submitted by the defendant and that by the government in connection with their briefs, the court finds and concludes that the government has clearly shown adequate support for a good faith belief that the information provided was correct and verifiable. In sum, this court finds and concludes that the deletion of the challenged material would not have substantially altered the fact pattern upon which the Chief Judge reached his decision of probable cause and, even if a contrary view were to be taken, the government has satisfied its burden of showing that the affiants were not acting with the requisite intent to deceive or a reckless disregard for accuracy.

The defendant has also asserted that the monitoring agents failed to obey the requirements of the orders and the statute in minimizing the interceptions to avoid unnecessary intrusion into the privacy of those affected by the electronic surveillance. The statutory requirement is at 18 U.S.C. § 2518(5), and the orders were consistent with the statute. The evidentiary hearing held in April gave the defendant a full opportunity to present evidence on this point. The defendant has asked for an opportunity for additional briefing on the subject, but there is no purpose to be served by any additional briefing.

■ The evidence showed that the monitoring agents had a practical problem with the microphones and transmitters in the Grabow residence. Under the procedure utilized, the recording of intercepted conversations was accomplished on a reel-to-reel Revox tape recorder with a playback head which was connected to two cassette recorders. The wire intercepts came through a pen register machine with an audio output feeding to the Revox reel recorder. The oral interception microphones and transmitters were connected to the Revox recorder by an amplifier which was activated by an alarm system when there was any noise in the residence other than ambient sounds. Because the alarm was being activated by such non-conversational sounds as ice falling off the roof or doors opening and closing, the agents kept a speaker on low amplification to hear sounds other than ambient noise, and when somebody was in the house to determine if the conversation was to be recorded. While this procedure may be contrary to the minimization requirement, it is of no significance because the government has indicated that it will not use the recorded conversations from the oral interceptions in the residences, and the remedy for failure to minimize is suppression of the evidence. *United States v. Cox*, 462 F.2d 1293, 1301–02 (8th Cir.1972), *cert. denied*, 417 U.S. 918, 94 S.Ct. 2623, 41 L.Ed.2d 223 (1974). *See also, United States v. Scott*, 516 F.2d 751 n. 18 (D.C.Cir.1975), *cert. denied*, 425 U.S. 917, 96 S.Ct. 1519, 47 L.Ed.2d 768 (1976). The Tenth Circuit indicated its approval of the Eighth Circuit *Cox* opinion in *United States v. Cox*, 567 F.2d 930, 932 (10th Cir.1977), *cert. denied*, 435 U.S. 927, 98 S.Ct. 1496, 55 L.Ed.2d 522 (1978).

The defendant has also made much of the testimony of Aurora police officer Stephen Williams concerning the method of recording from the monitoring of conversations on the telephones by plugging in a set

of headphones directly into the pen register, without recording. That was the subject of a memorandum from Officer Williams to the Chief of Police of Aurora, dated December 10, 1983 (Defendant's Exhibit A), in which Officer Williams requested relief from his assignment to the DEA Task Force. Officer Williams testified at length at the evidentiary hearing held by this court, and said that he could positively identify only one occasion when an officer plugged earphones into the pen register when the recording mechanism was not activated. That was done by Officer Michael Patrick for approximately no more than 1½ minutes. It is apparent from the testimony of other witnesses that this particular incident was not indicative of a pattern of activity; that appropriate directions concerning minimization were given; that there were good faith efforts to follow the requirements; that minimization was made difficult because of the use of code in conversations, and an awareness of the targets that the investigation was being conducted. Most significantly, the government has provided statistical evidence showing the numbers of interceptions and length of conversations being monitored, pursuant to this court's direction, and these statistical results demonstrate adequate compliance with the minimization requirements.

Government's Exhibits 5A and 5D summarize the oral and wire interceptions. According to Exhibit 5A, 1,821 phone interceptions were made, and of this number one-fifth did not result in a conversation. 290 of the calls pertained to conversations with no participation by alleged co-conspirators. About 265 lasted less than 2 minutes. Of those conversations with no evidentiary value, the percent minimized ranged from 72.6 percent for less than 1 minute, to 65 percent for 1 to 2 minutes, to 57.1 percent from 2 to 5 minutes.

The percentage of minimized conversations where a co-conspirator was a party that had no evidentiary value are: less than one minute—37.1 percent; 1 to 2 minutes—28.5 percent; 2 to 5 minutes—17.8 percent; over 5 minutes—16.7 percent.

Of course, the percentages of the government's minimization are not dispositive; the circumstances of the wiretap must also be considered.

> For example, if the agents are permitted to tap a public telephone because one individual is thought to be placing bets over the phone, substantial doubts as to minimization may arise if the agents listen to every call which goes out over that phone regardless of who places the call. On the other hand, if the phone is located in the residence of a person who is thought to be the head of a major drug ring, a contrary conclusion may be indicated.

*Scott v. United States*, 436 U.S. 128, 140, 98 S.Ct. 1717, 1725, 56 L.Ed.2d 168 (1978). The minimization of the alleged conversations involving at least one co-conspirator was not unreasonable. It is unrealistic, at least early on in the investigation, to expect the monitoring agents to predict the course of phone conversations. Additionally, in a drug conspiracy case it is difficult to require a high level of minimization where the targets are likely to be sophisticated enough to employ guarded or coded language and discuss irrelevant matters during the early moments of a conversation. *United States v. Quintana*, 508 F.2d 867, 874–875 (7th Cir.1975).

■ While a closer question, the monitoring of conversations of persons not named as interceptees was neither unreasonable nor a violation of the court order. It is troublesome that the government intercepted some conversations with evidentiary value from communications in which no alleged co-conspirators participated. However, over 90 percent of those conversations were minimized or terminated in less than two minutes, and under the circumstances the conduct of the monitoring agents was not unreasonable.

■ Included in the affidavit for the first order for electronic surveillance was information from cards obtained from trash bags which Grabow disposed of in a trash receptacle away from his home and

retrieved by DEA Task Force surveillance officers on August 16, 1983. Additionally, reference was made to an envelope obtained from trash from the front of the Grabow residence which had been put out for collection on September 13, 1983. The defendant moved to suppress the use of items seized from the trash upon the contention that these were warrantless seizures of "papers and effects" contrary to the protection of the Fourth Amendment to the United States Constitution. There is no reasonable expectation of privacy in discarded trash which has been put out for collection. *United States v. Terry,* 702 F.2d 299, 309 (2d Cir.), *cert. denied,* 461 U.S. 931, 103 S.Ct. 2095, 77 L.Ed.2d 304 (1983). Where the trash has been put out for collection no trespass is involved. *United States v. Kramer,* 711 F.2d 789, 791–794 (7th Cir.), *cert. denied,* 464 U.S. 962, 104 S.Ct. 397, 78 L.Ed.2d 339 (1983). The motion to suppress is denied.

■ The defendant moved to suppress all subscriber and toll record information obtained during the investigation. It is clear from the original and subsequent affidavits for electronic surveillance authorizations that extensive use was made of such information. The government's response to this motion and the affidavits show that such information was obtained through administrative subpoenas for toll records, and grand jury subpoenas duces tecum. Some information was also obtained as a result of court orders for such production, but those orders did not contain a finding of probable cause. Again, the defendant's position is that there have been violations of his privacy interests protected under the Fourth Amendment to the United States Constitution. Federal law is to the contrary. The records were those of the telephone companies, and the defendant as a subscriber has no Fourth Amendment expectation of privacy in such records. *United States v. Nolan,* 423 F.2d 1031, 1044 (10th Cir.1969), *cert. denied,* 400 U.S. 848, 91 S.Ct. 47, 27 L.Ed.2d 85 (1970). There is no merit to this motion.

■ The defendant also filed a motion to suppress the results of the use of pen registers to obtain the numbers dialed from certain telephones. Again, the contention is that "pen register surveillance," without a search warrant, is an invasion of the privacy protected by the Fourth Amendment. The Supreme Court of the United States has held to the contrary in *Smith v. Maryland,* 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1978). The defendant seeks to distinguish that precedent on the ground that the pen register surveillance was conducted by the telephone company at the request of police in that case. There is nothing in the Court's opinion which would support the view that there would be any legal significance to the suggested distinction. The premise of the ruling is that there is no reasonable expectation of privacy in the numbers dialed on a telephone. The adoption by the Colorado Supreme Court of a different interpretation of the requirements of the Colorado Constitution in *People v. Sporleder,* 666 P.2d 135 (Colo. 1983), is irrelevant to this federal investigation and prosecution.

■ The defendant has also challenged the electronic surveillance orders in this case upon the contention that the affidavits are insufficient for the findings required by 18 U.S.C. § 2518(3)(c) that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." In *U.S. v. Johnson,* 645 F.2d 865, 867 (10th Cir.), *cert. denied,* 454 U.S. 866, 102 S.Ct. 329, 70 L.Ed.2d 168 (1981), the court said that:

> ... the provisions of 18 U.S.C. § 2518(1)(c) are not designed to force the government to exhaust all other conceivable investigative procedures before resorting to wiretapping. Rather, that section of the statute serves to insure that wiretapping is not used in situations where traditional investigative techniques would suffice to expose the crime.

The Tenth Circuit has also held "that the determination of the dimensions of an extensive drug conspiracy justifies the use of

electronic surveillance." *United States v. Newman,* 733 F.2d 1395, 1399 (10th Cir. 1984).

A "hub and spoke" conspiracy investigation is particularly difficult. Some undercover infiltration was attempted and failed. Had it succeeded in placing an agent in the alleged organization, it is unlikely that much useful evidence on the scope of the criminal conspiracy could be generated. It is apparent from the statements of Rollins Snelling and John Rauch that each individual dealer involved in the alleged distribution had only a vague idea of the extent of the operation or the identity of other dealers. Concern for the physical safety of undercover agents and informants was justified by the totality of the circumstances.

It is also likely that continued surveillance of the Grabow residence in Aspen would have been difficult to conduct without jeopardizing the secrecy of the investigation. Aspen is a small community and non-locals are easily distinguished in the off season. Had extensive surveillance been practical, it would have been unlikely to help establish the dimensions of and participants in the suspected criminal activities.

Defendant's counsel in his brief on the issue of probable cause makes the following statements concerning the Aspen community:

The Affidavit is a socio-economic profile of Aspen, Colorado. The absence of conspicuous work schedules is indicative only of the vagaries of economic circumstances. Regular employment may not be characteristic of a mountain community devoted to principally recreational activities. Indeed, a random sampling of Aspen residents would probably disclose lifestyle patterns comparable to those described in the Affidavit. It is not remarkable that a community devoted to providing recreational services would be populated by individuals accustomed to recreational drug use. The telephone records which are outlined in the Affidavit disclose telephone calls made to individuals who have drug arrest records.

Individuals with prior drug involvement as subject of telephone calls may be probative of underlying criminal activity in some communities, but it is not, we submit, suggestive of that in a community such as Aspen which is dedicated to calculated hedonism.

We urge the Court to consider the totality of the circumstances in its review of the Affidavit in conjunction with the unique social and economic character of Aspen. A scrutiny of the Affidavit discloses prodigious efforts by law enforcement to penetrate the Aspen community, but does not establish the requisite probable cause.

The views expressed by counsel support not only the difficulty of using normal investigative techniques to investigate drug trafficking in such an environment, they also support the likelihood that the types of conversations to be intercepted would provide evidence of criminal conduct under the totality of the circumstances.

Accordingly, it is

ORDERED, that the motion to suppress the contents of wire and oral communications, filed January 22, 1985, is denied, and it is

FURTHER ORDERED, that the motion to suppress subscriber and toll record information, filed April 29, 1985, and the motion to suppress results of subscriber information, toll records and results of pen registers, filed May 20, 1985, are denied, and it is

FURTHER ORDERED, that the defendant shall have until September 13, 1985 to reassert and file any additional motions and briefs on outstanding motions.

## ON MOTION FOR RECONSIDERATION

On August 23, 1985, this court entered a Memorandum Opinion and Order denying motions to suppress the contents of wire and oral communications, to suppress the results of a "trash cover", and to suppress subscriber, toll record information, and the results of pen registers. On September 16, 1985 defendant filed a motion for reconsid-

eration of those rulings. The defendant's principal contention is that this court misapplied *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) by testing the effect of the deceptions in the affidavits on the showing of probable cause rather than deleting the material attributed to CI# 3 and Snelling. The defendant contends that *Franks* requires such deletions.

In this case the deception by the government agents actually detracted from the probable cause showing for the warrant. The affidavits displayed sufficient probable cause both as submitted and as corrected to reflect accurately the sources of information. There is no policy purpose served by deleting accurate information to deter government agents from misleading the magistrate or judge about the sources of that information where the misleading information has the effect of diminishing rather than enhancing the credibility of the sources and the information. That is not misleading within the meaning of the *Franks* doctrine.

In my view, the *Franks* rule is intended primarily to give meaning to the Fourth Amendment protection against a search without probable cause by allowing a defendant to challenge deceptions in an affidavit that enhance the presentation of probable cause for a warrant. *Franks* illustrates this concern. There, the defendant was arrested on a warrant supported by an affidavit which stated that the affiant had spoken with three persons who told him that the defendant owned and commonly wore certain clothing. The defendant challenged the veracity of the affidavit and offered to prove that the persons mentioned in the affidavit never spoke to the affiant. The Court held that he was entitled to an evidentiary hearing on the issue of the accuracy of the information in the affidavit. The Court concluded by observing that if information left in the affidavit after eliminating deliberately false information is sufficient to sustain probable cause, the inaccuracies are irrelevant.

In this case the government admits that there was a false and misleading identification of a source. The issue presented is not whether an evidentiary hearing is appropriate, but what action is necessary to protect the defendant's Fourth Amendment right to be free from searches unsupported by probable cause.

█ This court's ruling on this issue is entirely consistent with the cost and benefits analysis employed by the Supreme Court in *United States v. Leon*, —— U.S. ——, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). I continue to believe that the proper approach is to reread the affidavit replacing the deliberately false information with accurate information. Where the government, for whatever reason, deliberately inserts false information into an affidavit that detracts from a probable cause showing, constitutional guarantees are not implicated and there is no basis for suppressing evidence obtained from the warrant or a Title III interception.

With respect to the other challenged information in the affidavit, it is still my finding that the affiants did not give deliberately false information, and that even if they did, after the challenged material is deleted, probable cause has still been shown. The defendant in his brief suggests a variance between "Snelling's personal affidavit" and information attributed to him in the affidavit. At oral argument it was clarified that Snelling never signed an affidavit. The only affidavit on file is by David Olmstead, a private investigator hired by the defendant. Even so, Olmstead merely states that Snelling denied the accuracy of information in paragraph 27 which attributes to Snelling an admission that he was part of the conspiracy. The motion for reconsideration of the August 23, 1985 Order is denied.

The defendant has moved to dismiss the indictment because the United States Attorney disclosed ongoing grand jury proceedings to state and local law enforcement officials. At the time the disclosures in question were made, F.R.Cr.P. 6(e)(3) read:

(3) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury, other than its deliberations and the vote of any grand juror, may be made to—

(i) an attorney for the government for use in the performance of such attorney's duty; and

(ii) such government personnel as are deemed necessary by an attorney for the government to assist an attorney for the government in the performance of such attorney's duty to enforce federal criminal law.

The disclosures were made to police officer Stephen F. Barnhill, a member of the City and County of Denver Police Department, who was deputized as a Special Deputy United States Marshal for service with the Drug Enforcement Administration Task Force. He received the grand jury information in the course of that service. The defendant's motion to supplement the evidentiary record to add defendant's exhibits J and K, forms used in such "special deputations" is granted, and those exhibits have been received. In this court's view, the procedure followed was adequate to place officer Barnhill within the category of "government personnel" within the meaning of F.R.Cr.P. 6(e)(3) as it was during the time of this investigation.

Additionally, the defendant's policy argument as to why disclosure should not be allowed to state and local government officials is severely undermined by the recent amendment to Rule 6 explicitly allowing such disclosure. Subsection (e)(3)(ii) now reads "such government personnel (including personnel of a state or subdivision of a state) as are deemed necessary ..." The motion to dismiss the indictment for Rule 6(e) violations is denied.

Three other motions have now been grouped together by the defendant—a motion for hearing on derivative evidence, a motion for notice under Rule 12(d)(2), and a motion to exclude testimony—because all depend to some extent on whether the fruits of information derived from the oral interceptions will be used at trial. This court finds that probable cause existed for the others authorizing oral interceptions entered November 10, 1983 (Exhibit 1C), and December 9, 1983 (Exhibit 2C). For the reasons that support the previous finding of probable cause for the wire interceptions, probable cause also existed to support the order for the installation of oral interceptions under 18 U.S.C. § 2518. No support exists for the contention that a higher standard of probable cause should exist because the oral interceptions are more intrusive than the wire interceptions. Accordingly, I find that probable cause existed for the issuance of the November 10, 1983 and December 9, 1983 orders authorizing interception.

The defendant also seeks to establish standing to challenge evidence or the fruits of evidence obtained from the execution of certain search warrants. For the reasons given orally at the hearing held at the September 24, 1985 hearing, the motion to suppress evidence found at the Foster residence, 437 W. Smuggler is denied. The defendant has no standing to challenge the search of 1195 Cemetery Lane, the residence of John Maynard Torchiana (Exhibit 7). Grabow had no legitimate expectation of privacy in these premises at the time they were searched. *See, Rawlings v. Kentucky*, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980). Similarly, Grabow has no standing to challenge the search of his account at the Chicago Grain and Financial Futures Company (Exhibit 12), and in any event all that was recovered was a negotiable check in which Grabow can claim no legitimate expectation of privacy. *See, United States v. Miller*, 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976).

Searches were also conducted in Colorado on January 8, 1985 at 0016 McSkimming Road (Exhibit 6), and safe deposit box 1251 at the Bank of Aspen (Exhibit 8). The defendant seeks to establish standing to challenge searches in Florida at the Chicago Commodities Corporation (Exhibit 9), the International Safe Deposit Corporation (Exhibit 10), and a safe deposit box at Caribank (Exhibit 11). Assuming the de-

fendant could establish standing to contest these searches, they were adequately supported by probable cause.

The affidavits supporting the search warrant applications all provide a substantial basis for concluding that under the totality of circumstances a search would uncover evidence of wrongdoing. *Illinois v. Gates*, 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983). The warrants authorizing the search of Grabow's residence and safe deposit boxes for evidence relating to the conspiracy to distribute cocaine are supported by probable cause. The affidavits provide ample factual allegations from which the conclusion could be drawn that Grabow was involved in a continuous and extensive conspiracy to distribute cocaine. The information in the affidavits was gathered from confidential informants, authorized wire and oral interceptions, pen registers, "trash covers", undercover investigations and other recognized investigative techniques.

The affidavits supporting the search warrant executed at the Chicago Commodities Corporation in Florida establish a sufficient connection between Grabow and Kenneth Grossfeld, a manager of the company. Wire interceptions established that Grossfeld was purchasing Krugerrands for Grabow's account. Grossfeld explained at one point that Grabow had to pay $29 above market price for the gold because of the "way we pay." There is good reason to believe that the account is linked in some way to the larger conspiracy alleged in the affidavit.

The defendant contends that Internal Revenue Service Special Agent Rudy Schwarz received information concerning intercepted wire and oral communications relating to offenses other than those specified in the order approving the interceptions and improperly disclosed that information to the grand jury. 18 U.S.C. § 2517 provides in part:

(3) Any person who has received, by any means authorized by this chapter, any information concerning a wire or oral communication, or evidence derived therefrom intercepted in accordance with the provisions of this chapter may disclose the contents of that communication or such derivative evidence while giving testimony under oath or affirmation in any proceeding held under the authority of the United States or of any State or political subdivision thereof ...

(5) When an investigative or law enforcement officer, while engaged in intercepting wire or oral communications in the manner authorized herein intercepts wire or oral communications relating to offenses other than those specified in the order of authorization or approval .... (s)uch contents and any evidence derived therefrom may be used under subsection (3) of this section when authorized or approved by a judge of competent jurisdiction where such judge finds on subsequent application that the contents were otherwise intercepted in accordance with the provisions of this chapter.

Agent Schwarz did not disclose the contents of any intercepted communications. The defendant argues that evidence derived from interceptions of wire and oral communications, i.e. the identity of various witnesses, from whom information relevant to the tax counts was gathered, was revealed by Schwarz to the grand jury investigating Grabow. The government contends that no approval of disclosure of any derivative evidence was necessary because the evidence related to offenses specified in the order authorizing the interceptions.

■ The interception of the communications in dispute was lawful and any evidence concerning cash transactions derived from the information was relevant to the CCE count in the indictment, 21 U.S.C. § 848. The only issue here is improper disclosure of derivative evidence to the grand jury. It is unnecessary to determine whether the information related by agent Schwarz was derived from intercepted communications and whether the tax counts constituted an "other offense" as contemplated by the statute. Assuming that improper disclosure occurred, in this circuit suppression or dismissal of the in-

dictment are not available remedies for the violation of 18 U.S.C. § 2517(5). *United States v. Cardall*, 773 F.2d 1128 (10th Cir. 1985). *See also United States v. Watchmaker*, 761 F.2d 1459, 1471 (11th Cir.1985) (questioning whether dismissal is a remedy for § 2517(5) violations), *United States v. Vento*, 533 F.2d 838, 855 (3rd Cir.1976) (holding that suppression is not available where information was improperly disclosed under § 2517(5)).

In *Cardall*, the government obtained an interception order permitting interceptions of wire communications at the defendants' premises. While conducting the interceptions agents heard communications leading them to believe that the defendants were engaged in bankruptcy fraud, an offense not included in the order authorizing interceptions. The evidence was presented to the grand jury without a § 2517 order, and an indictment was returned charging the bankruptcy offenses. The court of appeals reversed the district court's suppression of evidence from the wiretaps, and held that neither dismissal nor suppression is required for an admitted violation of § 2517(5).

The defendant suggests that *Cardall* is distinguishable because 26 U.S.C. § 7201 (attempt to evade or defeat tax), unlike bankruptcy fraud, is not an offense for which an order permitting wire or oral communications may be requested. The fact remains that the *interception* was lawful; there is no basis for the view that the nature of the "other offense" concerning which the alleged unlawful *disclosure* was made affects the remedy available to a criminal defendant.

■ Defendant has moved for a *James* hearing to determine whether a preliminary showing of conspiracy exists and whether statements of co-conspirators will be admissible. In this circuit:

a co-conspirator's hearsay statement is not admissible unless the trial judge finds three facts by a preponderance of the evidence. The trial judge must determine that the conspiracy existed, that the declarant and the particular defend-ant were members of the conspiracy, and that the statement was made during the course of and in furtherance of the conspiracy.

*United States v. Radeker*, 664 F.2d 242, 243 (10th Cir.1981). In making the necessary rulings at trial when the issue arises, the court will consider the evidence presented at the hearings on the defendant's pre-trial motions as well as the evidence at trial and make rulings accordingly. No further pre-trial hearing is necessary on this issue.

On September 25, 1985, the defendant filed a specification of items pertinent to discovery and the government filed its response on October 10, 1985. The defendant replied to that response on October 15, 1985 and the government responded to the reply on October 21, 1985. After reviewing the positions taken in those papers, the court finds and concludes that the defendant has not made a sufficient showing for an order compelling additional discovery. Accordingly, to the extent that the government has not complied with the defendant's discovery requests, they are denied.

Accordingly, it is

ORDERED, that:

1. The motion to suppress trash cover, filed April 29, 1985, is denied for reasons given in the August 23, 1985 Memorandum Opinion and Order.

2. The motion for reconsideration, filed September 16, 1985, is denied.

3. The motion to dismiss for violation of F.R.Cr.P. 6(e), filed September 16, 1985, is denied.

4. The motion to suppress evidence seized pursuant to the search warrants in Exhibits 6, 7, 8, 9, 10, 11 and 12, is denied.

5. The motion to suppress evidence seized at the Foster residence, 437 W. Smuggler, is denied for the reasons given orally at the September 24, 1985 hearing.

6. The motion to suppress handwriting exemplar, filed January 28, 1985, is denied for the reasons given orally at the September 24, 1985 hearing.

7. The motion to dismiss or suppress for a violation of 18 U.S.C. § 2517(5) is denied.

8. The motion for a *James* hearing is denied.

9. The requests for additional discovery are denied.