**UNITED STATES of America, Appellant,**

v.

**Julian SANDOVAL et al., Appellees.**

No. 76–1010.

United States Court of Appeals, Ninth Circuit.

Dec. 6, 1976.

Rehearing and Rehearing En Banc Denied April 8, 1977.

John G. Hawkins, Asst. U. S. Atty. (argued), Tucson, Ariz., for appellant.

James Wilkes (argued), Leslee Sloss (argued), Charles M. Giles (argued), Ann Bowen (argued), Howard Kashman (argued), William F. McDonald (argued), Tucson, Ariz., for appellees.

Before TRASK and ANDERSON, Circuit Judges, and WOLLENBERG,* District Judge.

J. BLAINE ANDERSON, Circuit Judge:

The Government appeals from an order of the district court granting appellees' motions to suppress evidence obtained from wiretaps. We reverse.

18 U.S.C. § 2518(1)(c) requires a wiretap application to include:

"a full and complete statement as to whether or not other investigative procedures have been tried and failed or why

---

* The Honorable Albert C. Wollenberg, United States District Judge, Northern District of California, sitting by designation.

they reasonably appear to be unlikely to succeed if tried or to be too dangerous;" 18 U.S.C. § 2518(3)(c) provides that a judge may issue an order authorizing a wiretap if he determines that:

"normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous;"

Language identical to these provisions is contained in Arizona Revised Statutes, §§ 13–1057(B)(3) and 13–1057(C)(3).

*FACTS*

On February 24, 1975, the Pima County Attorney submitted an application (CA–75–1) for wiretap to the Superior Court of the State of Arizona, in and for the County of Pima. This application was supported by a lengthy and detailed affidavit of Tucson Police Officer Eugene L. Anaya. This affidavit disclosed the efforts of the Police Department, through the use of five confidential informants, to infiltrate Sandoval's organization. These informants were able, on two occasions, to purchase heroin directly from Sandoval. The informants also provided information as to Sandoval's use of numerous individuals who were involved in the distribution scheme. Confidential informant number 4 provided a partial list of the names and addresses of Sandoval's distributors. The affidavit then went on to include Officer Anaya's summary of reasons why normal investigative procedures other than a wiretap had failed and were unlikely to be successful.[1]

The Superior Court granted the application, noting that probable cause existed for believing that Sandoval's organization was violating the law, and that "normal investigative procedures have been attempted and have failed and any other investigative procedures would not likely succeed and would be too dangerous."

The original wiretap was terminated when Sandoval changed his residence and a new application (CA–75–2) for a wiretap at Sandoval's new residence was submitted

---

1. The affidavit at pages 10–11 states:

"Your affiant and the members of the Metropolitan Area Narcotics Squad have concluded that all means have been exhausted short of a wiretap in trying to compile enough evidence to effect an arrest on JULIAN SANDOVAL and his wife, AMELIA TREJO, as well as the other known or unknown members of his organization on the illegal possession, sales and distribution of heroin, for the following reasons:

1. That when JULIAN SANDOVAL orders large amounts of heroin from Mexico, he uses his relatives or distributors to take possession of the heroin and to cut it.
2. That such heroin is then distributed by these certain individuals to different residences for storage.
3. That JULIAN SANDOVAL has insulated himself by taking heroin orders by telephone at his residence, 5261 So. Champion Strav., Tucson, Arizona.
4. That JULIAN SANDOVAL does not keep narcotics in his residence but uses the telephone to call his heroin distributors to make deliveries of heroin to his customers.
5. That JULIAN SANDOVAL has spurned all efforts by informers to make deliveries of heroin himself.
6. That according to informants 1, 2, 3, 4 and 5, JULIAN SANDOVAL has taken steps to inform all his heroin customers and distributors that he will not permit any of them to introduce or bring to his residence unknown subjects. This in turn prevents the introduction of undercover narcotics agents into SANDOVAL's operation.
7. That surveillance by the Metropolitan Area Narcotics Squad has been unsuccessful because JULIAN SANDOVAL insulates himself against being caught in possession of narcotics himself.
8. Further that confidential informant # 5 related to your affiant that he was reluctant to give your affiant further information on JULIAN SANDOVAL because if JULIAN SANDOVAL found out confidential informant # 5 was afraid that JULIAN SANDOVAL would put out a contract on his (confidential informant # 5) life.
9. Further that confidential informants 1, 2, 3, 4 and 5 are each unwilling to testify for the State against JULIAN SANDOVAL and his organization for fear of personal safety.
10. That other investigative procedures have been tried and failed and your affiant believes that any other investigative procedures other than those already employed would not likely succeed and would be too dangerous.
11. That 1½ kilos of heroin are presently being stored in the Tucson Metro area and the only means of finding the storage location and recovering the illegal heroin is through a wiretap placed on telephone number 294–6438."

and granted. At the expiration of CA–75–2, a new application was made for a 30-day extension in CA–75–2A, which was granted. Just prior to this application for extension, the state officials sought assistance from the Federal Drug Enforcement Administration and the United States Attorney's Office. The United States Attorney's Office subsequently brought the indictment with which we are concerned.[2] Finally, an application was made to the Superior Court for a wiretap on a related individual, Adrian Contreras, in CA–75–3, which was also granted.

Motions to Suppress were filed and joined in by all appellees. On October 4, 1975, a hearing on the motions was held and evidence was received. On October 24, 1975, the district court granted the Motions to Suppress. The district court's reasoning is set forth orally in the transcript of the October 24, 1975, hearing. The district court found that the application and affidavit for the first wiretap (CA–75–1) suggested that normal investigative techniques had in fact been successful and therefore the original wiretap should never have been authorized. The district court ruled that the first wiretap was illegal and all subsequent wiretaps or applications and all evidence resulting therefrom would be suppressed.

### ISSUE

The sole issue before this panel is whether the district court, in analyzing the underlying affidavit, was correct in its determination that the affidavit did not furnish a basis to show compliance with 18 U.S.C. § 2518(3)(c).

### DISCUSSION

Title III of the Omnibus Crime Control and Safe Streets Act of 1968, Pub.L.No. 90–351, 82 Stat. 197 (codified at 18 U.S.C. § 2510, et seq.), sets forth carefully-defined circumstances, which require strict adherence, before judicial authorization may be given for the use of electronic surveillance. *United States v. Giordano,* 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974).

One such limiting circumstance is set out in 18 U.S.C. § 2518(3)(c), which provides that before approval for a wiretap is given, the presiding judge must determine that:

> "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous . . ."

*See also* 18 U.S.C. § 2518(1)(c). This determination comes from close scrutiny and analysis of the underlying application and affidavit submitted in support of the wiretap. The judge to whom the application for wiretap is submitted is vested with considerable discretion in his analysis. *United States v. Smith,* 519 F.2d 516 (9th Cir. 1975). We are also reminded that:

> " . . . the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner."

*United States v. Ventresca,* 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965).

Appellees argued to the district court that the affidavits revealed that normal investigative techniques were in fact successful in obtaining evidence sufficient to convict Julian Sandoval and his wife. A similar argument was rejected by this court's recent opinion in *United States v. Scully,* 546 F.2d 255 (May 24, 1976, amended October 25, 1976).

In *Scully,* the Government was investigating the drug network of one Robert Macedo. The Government applied for and received authorization to tap the telephones

---

**2.** On August 14, 1975, the Grand Jury returned a 32-count indictment in Cr. 75–549 charging appellees with a conspiracy to possess heroin with intent to distribute. On the same day the Grand Jury returned a 5-count indictment against 5 of the appellees named in Cr. 75–549 plus an additional defendant not named in Cr. 75–549. Because the suppression issue was identical in both Cr. 75–548 and Cr. 75–549, counsel for all parties in both cases agreed that the suppression issue would be heard and determined by the presiding judge in Cr. 75–549. Stipulations to the effect that the determination made in Cr. 75–549 would be binding on all parties in Cr. 75–548 were filed in both cases.

of Macedo and Scully, the persons "known" to be engaged in an illegal heroin operation. Both Macedo and Scully, as well as others, were convicted for violating the narcotics laws, largely on the basis of the electronic surveillance evidence. On appeal, the defendants argued that the trial judge had erroneously concluded that the requirements of 18 U.S.C. § 2518(3)(c) had been satisfied. In rejecting this argument, this court stated:

"The fact that Agent Sherrington was successful in making purchases from Macedo is relied upon by appellants to argue that further undercover work rather than wiretaps should have been followed. But according to the affidavits in support of the wiretaps, undercover work alone was not the complete solution to the crimes then being committed or to the identification of the perpetrators. Some of the conspirators worked principally by telephone, and ordinary surveillance could not have made them known or developed evidence by which their complicity could be established in court. Some of the informants refused to testify, and thus, without means of confirmation, their disclosures would be useless. In addition, given the extremely secretive methods used by drug dealers in general and Macedo in particular, it is highly unlikely that the government could have achieved the success it did here in uncovering this large network by further infiltration." (546 F.2d at 260–61).

Likewise, in the instant case, appellees point to facts contained in the affidavit that reveal that normal investigative procedures were successful.

Our review of the underlying affidavit submitted by Officer Anaya and the district court's reasoning for granting the Motion to Suppress disclose to us that the district court took a narrow and restrictive perspective of the scope and objectives of the investigation into Sandoval's organization. The district court stated:

"As I see it, three times in the incidents that we have been discussing, three times the law enforcement officers had suffi-

cient evidence to arrest and convict Julian [Sandoval] on heroin sales. And in the month preceding the obtaining of the wiretap order, they had evidence sufficient to arrest both and convict both Julian and his wife. But on the basis that it would violate the confidentiality of informant number four, they didn't do it. "In light of the facts that have just been discussed, all of which appear in the affidavit that was filed in support of the application for the tap, I don't believe there can be any basis for the finding that 'normal investigative procedures have been tried and have failed.' The fact of the matter is they had evidence on three occasions to apprehend, prosecute and convict Julian and on at least one occasion his wife." (Page 10 of the reporter's transcript of October 24, 1975).

Assuming arguendo that the police officers did in fact have evidence sufficient to apprehend and convict both Julian Sandoval and his wife, the affidavit, when read in a practical and commonsense fashion, *Ventresca, supra,* leads us to the conclusion that the objective of the investigation was much broader than the mere apprehension of Sandoval and his wife. The affidavit discloses that the law enforcement officials were just as concerned in apprehending all of Sandoval's numerous "satellites" that made up his distribution scheme. Additionally, it is apparent that the officers involved wanted to find the storage locations and recover the illegal heroin, the actual possession of which Julian Sandoval had insulated himself from his elaborate machinations. Requiring the officers to halt their investigation when they obtained evidence to prosecute only Julian Sandoval and his wife would have frustrated this objective. Our review discloses that the affidavit is sufficient to show that these "satellites" probably would not have been uncovered and sufficient evidence would not have been adduced through the use of normal investigative procedures.

Appellees' fears of unlimited use of electronic surveillance simply by the submission of an affidavit that states "we think there

are others and we want to get them all" are not well founded. Such an unwarranted excursion is limited by the requirement of an affidavit with "specifics" and not mere conclusions, the requirements of probable cause and by the necessity of obtaining judicial review by an impartial magistrate. There is no such fear present here, the affidavit, while broad in the sense of the numbers suspected, is narrowly limited to Sandoval and his underlings and to the one alleged conspiracy.

We pass on no other issues. We believe the district court erred in its analysis of the affidavit, it scope and the applicable law, and reverse the granting of the Motion to Suppress. The affidavit submitted was sufficient to justify the issuance of the wiretap order under both state and federal law.

REVERSED and REMANDED for further proceedings not inconsistent with this opinion.