**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Kenneth JOHNSON, Max Abiledinger,
and Patrick Joseph Armstrong,
Defendants-Appellants.**

**Nos. 80–1283, 80–1295, and 80–1321.**

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Jan. 30, 1981.

Decided April 9, 1981.

Rehearing Denied in Nos. 80–1283 and
80–1295 May 8, 1981

Stephen Jones (James Craig Dodd, Enid, Okl., with him on brief), for Max Abiledinger and Kenneth Johnson, defendants-appellants.

Leonard D. Munker, Federal Public Defender, District of Kansas, Wichita, Kan., for Patrick Joseph Armstrong, defendant-appellant.

Before McWILLIAMS, WILLIAM E. DOYLE, and LOGAN, Circuit Judges.

McWILLIAMS, Circuit Judge.

Max Abiledinger, Kenneth Johnson, and P. Joseph Armstrong, along with five other persons, were charged in a 26-count indictment with conspiracy to possess and distribute marijuana and cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1) (1972) and 18 U.S.C. § 2 (1979), and with various substantive violations of the Controlled Substances Act. Abiledinger and Johnson proceeded to trial before the court on a stipulation of testimony. Each was adjudged guilty on the conspiracy charge, as well as guilty on several substantive charges. Both appeal their respective convictions.

Armstrong waived a jury trial, and, on trial to the court, was found guilty on the conspiracy count, as well as on several substantive charges. He appeals his conviction.

These three appeals were not formally consolidated on appeal. They were, however, companioned for the purposes of oral argument and will be disposed of in one opinion.

### Nos. 80–1283 and 80–1295

These two appeals relate to defendants Abiledinger and Johnson. Both raise the same two arguments: (1) the affidavit in support of the application for electronic surveillance was legally insufficient and, therefore, the evidence resulting from the electronic surveillance should have been suppressed; and (2) the affidavit in support of the application for a warrant to search the home of Johnson was legally insufficient and, accordingly, the items seized in the

Charles Lee Waters, Asst. U. S. Atty., Oklahoma City, Okl. (Larry D. Patton, U. S. Atty., Oklahoma City, Okl., with him on brief), for plaintiff-appellee.

subsequent search of Johnson's home should not have been admitted into evidence at trial.

■ At the outset we note that affidavits in support of an application for a wiretap order, as well as affidavits in support of a search warrant, are to be read in a practical and commonsense manner rather than hypertechnically. *United States v. Santarpio,* 560 F.2d 448, 453 (1st Cir.), *cert. denied,* 434 U.S. 984, 98 S.Ct. 609, 54 L.Ed.2d 478 (1977); *see also United States v. Ventresca,* 380 U.S. 102, 108–109, 85 S.Ct. 741, 745–46, 13 L.Ed.2d 684 (1965), and *United States v. Rios,* 611 F.2d 1335 (10th Cir. 1979), *later appeal,* 637 F.2d 728 (10th Cir. 1980).

■ In regard to the defendants' initial contention, the procedure for the interception of wire or oral communications is set forth in 18 U.S.C. § 2518 (1979). 18 U.S.C. § 2518(1)(c) provides that an application for an order authorizing the interception of a wire communication shall include the following:

> (c) a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous.

It is the appellants' position that the affidavit of FBI Special Agent Jerry Emmons does not meet the "necessity" requirement of 18 U.S.C. § 2518(1)(c), *i. e.,* the affidavit did not demonstrate a need to use electronic surveillance, instead of more traditional investigative procedures. We do not agree with this argument. The provisions of 18 U.S.C. § 2518(1)(c) are not designed to force the Government to exhaust all other conceivable investigative procedures before resorting to wiretapping. Rather, that section of the statute serves to insure that wiretapping is not used in situations where traditional investigative techniques would suffice to expose the crime. *United States v. Santarpio,* 560 F.2d at 452; *United States v. Clements,* 588 F.2d 1030, 1036 (5th Cir.), *cert. denied,* 440 U.S. 982, 99 S.Ct. 1792, 60 L.Ed.2d 243 and *cert. denied,* 441 U.S. 936, 99 S.Ct. 2062, 60 L.Ed.2d 666 (1979).

■ In the instant case, the orders under attack authorized the wiretap of the home of one Eddie Riveira, and his place of business. Eddie Riveira was one of the eight individuals subsequently indicted and was a principal actor in a drug ring of considerable proportions. We have studied the affidavits of FBI Agent Emmons and believe that each meets the requirements of 18 U.S.C. § 2518(1)(c). Emmons outlined the investigative procedures that had been used and, in our view, demonstrated the need for wiretapping. By the time the application for wiretap authorization was made, Riveira's involvement was fairly well established. The FBI was properly concerned, however, with identifying all of the members of the conspiracy, as well as the precise nature and scope of the illegal activity. Both the apprehension of so-called "satellites" involved in the distribution scheme and the determination of the dimensions of an extensive drug conspiracy have been held to justify the use of electronic surveillance. *United States v. Sandoval,* 550 F.2d 427, 430 (9th Cir. 1976), *cert. denied,* 434 U.S. 879, 98 S.Ct. 234, 54 L.Ed.2d 160 (1977); *United States v. Abascal,* 564 F.2d 821, 826 (9th Cir. 1977), *cert. denied,* 435 U.S. 942, 98 S.Ct. 1521, 55 L.Ed.2d 538 and *cert. denied,* 435 U.S. 953, 98 S.Ct. 1583, 55 L.Ed.2d 804 (1978). In light of such decisions, the affidavit of Agent Emmons comports with 18 U.S.C. § 2518(1)(c).

■ The appellants also contend that Agent Emmon's affidavit in support of the warrant to search Johnson's home was legally insufficient. The appellants claim that the affidavit in the instant case did not inform the issuing magistrate of any underlying circumstances from which it could be concluded that the narcotics, or evidence related thereto, could be found in Johnson's residence as required by *Aguilar v. Texas,* 378 U.S. 108, 114, 84 S.Ct. 1509, 1514, 12 L.Ed.2d 723 (1964). It is not necessary, however, that the affidavit indicate that the evidence sought will undoubtedly be found in the place to be searched. Rather, it is only necessary that the facts and circumstances described in the affidavit war-

rant a man of reasonable caution to believe that such evidence is located at the premises or location to be searched. *United States v. Rahn,* 511 F.2d 290, 293 (10th Cir.), *cert. denied,* 423 U.S. 825, 96 S.Ct. 41, 46 L.Ed.2d 42 (1975); *Edmondson v. United States,* 402 F.2d 809, 812 (10th Cir. 1968). In our view, the affidavit established probable cause and the items seized[1] in the search of Johnson's residence were properly admitted into evidence.

### No. 80–1321

The primary ground urged by Armstrong for reversal is that the evidence in support of his conviction for conspiring to distribute cocaine is legally insufficient. Armstrong, and the others, were charged with conspiracy to distribute both marijuana and cocaine, Schedule I and II controlled substances, respectively, in violation of 21 U.S.C. § 846 (1976). The trial court found Armstrong guilty of the conspiracy charge. On appeal, counsel concedes that the evidence is amply sufficient to support a conviction for conspiring to distribute marijuana, but argues that it is legally insufficient to show a conspiracy to distribute cocaine. We think counsel reads the record too narrowly.

This conspiracy had its inception when Armstrong, who was then serving as an assistant district attorney in Oklahoma, aided Eddie Riveira and his business associate, Robert Lopez, in the theft of approximately 2,200 pounds of confiscated marijua-

na by informing them of its location and allowing them to steal it. After the marijuana was cleaned and sold, Armstrong shared in the proceeds of the sales, such as they were. The foregoing, however, was not the only basis for the indictment. After this initial transaction, additional marijuana was acquired and distributed. Later, the operation was expanded to include the acquisition and sale of cocaine. Armstrong at no time withdrew from the conspiracy. On the contrary, the testimony indicated that Armstrong knew of Abiledinger and Johnson's activities and discussed some of the cocaine transactions with Eddie Riveira. Armstrong had in fact used cocaine with Riveira and obtained cocaine for his personal use from Riveira. He also used the information which he acquired by virtue of his office to warn his co-defendants that they were under suspicion, and, indeed, advised them of the status of proceedings before a Grand Jury, which was inquiring into the entire matter. Suffice it to say, the record supports the trial court's finding that Armstrong conspired to distribute cocaine, as well as marijuana.[2] Accordingly, the sentence imposed by the trial court on the conspiracy to distribute cocaine charge, *i. e.,* nine years imprisonment, was permissible under the applicable statute[3] and will not be disturbed on appeal. *See United States v. Bridwell,* 583 F.2d 1135, 1142 (10th Cir. 1978).

Armstrong's other contentions have been considered and do not require comment.

All judgments affirmed.

---

1. Among other things, the search of Johnson's residence led to the seizure of the following: (1) one RCBS reloading scale; (2) two address books; (3) one box of hypodermic needles; (3) two smoke grenades; (4) a revolver and holster; (5) $4550 in fifty dollar and twenty dollar bills; (6) $20,000 in one hundred dollar and fifty dollar bills; (7) 15 plastic envelopes containing a white substance which was later determined to be cocaine; (8) one bottle of lactose monohydrate powder; and (9) a brown leather purse containing 24 rings and a plastic bag containing a greenish-brown substance.

2. We note that the conviction of a co-conspirator may be sustained upon a sufficient showing of the essential nature of the plan and the individual's connection with it. It is not necessary that each member of the conspiracy know

all of the details or be acquainted with all of the parties to the illegal scheme, as long as he is aware of its general scope. *Blumenthal v. United States,* 332 U.S. 539, 557, 68 S.Ct. 248, 256, 92 L.Ed. 154 (1947); *United States v. Parnell,* 581 F.2d 1374, 1382 (10th Cir. 1978), *cert. denied,* 439 U.S. 1076, 99 S.Ct. 852, 59 L.Ed.2d 44 (1979).

3. The applicable statute is 21 U.S.C. § 846 (1972) which provides that the maximum sentence which may be imposed upon a conviction of conspiracy may not exceed the maximum punishment prescribed for the commission of the offense which was the object of the conspiracy. In this case, that maximum was 15 years as prescribed by 21 U.S.C. § 841(b)(1)(A) (1972).