**UNITED STATES of America, Plaintiff,**

**v.**

**Aaron MOSKO, Phil Pinelli, David Pinelli, William Burbridge, Barry Cohen, Ronald Pitts, George O'Brien, Martin Mosko, Thomas Gottone, Daniel Mordecai, Ralph Lackey, Robert Sheehan, Bernard Jansen, Defendants.**

**Crim. No. 86–CR–24.**

United States District Court, D. Colorado.

Feb. 12, 1987.

Thomas O'Rourke, Asst. U.S. Atty., Denver, Colo., Richard J. Marien, Organized Crime Section, Dept. of Justice, Kansas City, Mo., for the Government.

John B. Moorhead, Bruce Pringle, Denver, Colo., for defendants Aaron Mosko and Martin Mosko.

Joseph Saint-Veltri, Denver, Colo., for defendant Phil Pinelli.

E. Michael Canges, Denver, Colo., for defendant David Pinelli.

Arthur Swartz, Irvin Borenstein, Denver, Colo., for defendant William Burbridge.

Brian Holland, Asst. Federal Public Defender, Denver, Colo., for defendant Barry Cohen.

Leonard M. Chesler, Denver, Colo., for defendant Ronald Pitts.

Gary Lozow, Denver, Colo., for defendant George O'Brien.

Irving P. Andrews, Denver, Colo., for defendant Thomas Gottone.

Robert Tabor Booms, Denver, Colo., for defendant Daniel Mordecai.

Linda Creagan, Denver, Colo., for defendant Ralph Lackey.

Rollie R. Rogers, Denver, Colo., for defendant Robert Sheehan.

Jeralyn E. Merritt, Denver, Colo., for defendant Bernard Jansen.

## MEMORANDUM OPINION AND ORDER

MATSCH, District Judge.

On February 5, 1986, a federal grand jury returned a thirty-five count indictment charging the defendants with violations of gambling, tax, and financial reporting laws, 18 U.S.C. §§ 1952 and 1955, 26 U.S.C. §§ 7201 and 7262, 31 U.S.C. §§ 5313 and 5322(b) and 31 C.F.R. § 103.22(a)(1). The investigation in this case included electronic surveillance, pursuant to a court order on an application submitted on November 16, 1984 by Justice Department attorney Robert E. Mydans. Government Exhibit 1–A. FBI Special Agent David L. Dirkse submitted the supporting affidavit. Government Exhibit 1–B. These documents named defendants Aaron Mosko, Barry Cohen, Phil Pinelli and "others as yet unknown" as interceptees. The government sought authority to intercept communications over nine telephone numbers, including a number subscribed to by Aaron Mosko's son, Martin Mosko, on the belief that Aaron Mosko sometimes used a call forwarding device to route his incoming calls to his son's telephone. *See,* Government Exhibit 1–B at ¶¶ 53, 69. Chief Judge Sherman G. Finesilver approved the requested interception of wire communications for a period of thirty days beginning · November 16, 1984. Government Exhibit 1–C. No extensions of time were requested, and the wiretap order expired on December 16, 1984.

On December 8, 1984, Special Agent Dirkse subscribed an affidavit for search warrants. Government Exhibit 2–A. This affidavit incorporated the affidavit in support of the wiretap, and included information obtained from the wire interceptions and the use of pen registers. Chief Judge Finesilver issued thirty-seven search warrants for the residences, businesses, persons and automobiles of all defendants except Robert Sheehan, as well as for non-defendant Benjamin Montoya. Government Exhibits 2–B to 2–LL.

The government also obtained subscriber and toll record information concerning the defendants, and grand jury subpoenas of certain defendants' financial records. The defendants filed motions addressed to all of these investigative procedures, and evidentiary hearings were held before this court on August 27–28, 1986, and September 29, 1986.

### Motions to Suppress Evidence Obtained from Use of Pen Registers, Subscriber and Toll Records

■■■ The defendants seek to suppress evidence obtained from the government's use of pen registers, contending that there was no showing of probable cause for the issuance of the orders authorizing them. Those orders were issued under the All Writs Act, 28 U.S.C. § 1651(a), and do not contain findings of probable cause. The protections of the Fourth Amendment do not extend to information obtained from pen registers. The Supreme Court has held that there is no legitimate expectation of privacy in the numbers dialed from a telephone. *Smith v. Maryland,* 442 U.S. 735, 741–743, 99 S.Ct. 2577, 2580–2581, 61 L.Ed.2d 220 (1979). *See also, United States v. New York Telephone Co.,* 434 U.S. 159, 166–168, 98 S.Ct. 364, 369–370, 54 L.Ed.2d 376 (1977) (Title III restrictions do not apply to pen registers).[1]

■■■ The defendants also argue that the pen register evidence should be suppressed because the applications and court orders failed to comply with Colorado case law holding that pen registers are a search within the meaning of the Colorado Constitution and therefore require a search warrant supported by probable cause. *People v. Sporleder,* 666 P.2d 135, 139–140 (Colo. 1983). This court has previously held that state law on this point is irrelevant to a

---

1. Title 18 of the United States Code was recently amended to provide that the installation and use of a pen register requires a court order. Such orders may not issue without certification by the government that the information likely to be obtained is relevant to an ongoing criminal investigation. 18 U.S.C. §§ 3121 and 3123. This amendment has no retroactive effect, and is not applicable to this case. P.L. 99–508, Sec. 302.

federal investigation and prosecution. *United States v. Grabow,* 621 F.Supp. 787, 794 (D.Colo.1985).

The defendants' motions to suppress the subscriber and toll record information obtained by the government fail for the same reason. A telephone subscriber has no legitimate expectation of privacy in customer records kept by the telephone company. *Nolan v. United States,* 423 F.2d 1031, 1044 (10th Cir.1969), *cert. denied,* 400 U.S. 848, 91 S.Ct. 47, 27 L.Ed.2d 85 (1970), *United States v. Grabow,* 621 F.Supp. at 794.

### Motions to Suppress Evidence—Financial Records

Defendants Phil Pinelli and Ronald Pitts filed motions to suppress the use of financial records obtained by grand jury subpoenas, claiming alternatively that the records were not "presented" to the grand jury as required by section 3420 of the Right to Financial Privacy Act of 1978, 12 U.S.C. §§ 3401–3422, or that they were not presented until after the government had already used them to aid its investigation. Section 3420 states in pertinent part:

Financial records about a customer obtained from a financial institution pursuant to a subpena issued under the authority of a Federal grand jury—

(1) shall be returned and actually presented to the grand jury....

■ The government does not dispute that financial records were obtained by the grand jury, and it does not argue that the records were properly presented. Instead, it relies on *United States v. Frazin,* 780 F.2d 1461 (9th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 158, 93 L.Ed.2d 98 (1986), for the proposition that suppression is not a remedy for a § 3420 violation. In *Frazin,* the court found that the civil remedies set forth at § 3417(a) were the exclusive remedies for a violation of the Act. "Had Congress intended to authorize a suppression remedy, it surely would have included it among the remedies it expressly authorized [in § 3417(a) ]". *United States v. Frazin,* 780 F.2d at 1466. The court also noted that § 3417(d) provides: "The remedies and

sanctions described in this title shall be the only authorized judicial remedies and sanctions for violations of this title." This court finds the language of § 3417 and the reasoning in *Frazin* dispositive of this issue.

### Motions to Suppress Contents of Intercepted Wire Communications

The defendants seek to suppress the contents of recorded wire interceptions conducted pursuant to Chief Judge Finesilver's order of November 16, 1984 on several grounds.

#### A. Failure to Comply with 18 U.S.C. § 2518(1)(e)

■ 18 U.S.C. § 2518(1)(e) requires that each application for a wiretap order include:

[A] full and complete statement of the facts concerning all previous applications known to the individual authorizing and making the application, made to any judge for authorization to intercept, or for approval of interceptions of, wire or oral communications involving any of the same persons, facilities or places specified in the application, and the action taken by the judge on each such application....

The defendants argue for suppression of intercepted communications based on the government's conceded failure to disclose to Chief Judge Finesilver that Phil Pinelli and George O'Brien were named as interceptees in a prior wiretap order. That order was issued on November 21, 1980 by Judge Robert Kelley of the Eighteenth Judicial District of the State of Colorado, and has throughout been referred to by the parties as the *McNulty* wiretap or *McNulty* investigation. The results of the *McNulty* wiretap were furnished to federal authorities and a federal indictment was returned. The evidence gathered in the *McNulty* wiretap was suppressed by the trial court in an order which was affirmed in a divided en banc decision of the Tenth Circuit Court of Appeals, *United States v.*

*McNulty,* 729 F.2d 1243 (10th Cir.1983), *reh'g. en banc,* 729 F.2d 1264 (1984).

The majority opinion concluded that Judge Kelley's order was not authorized under Colorado's wiretapping statutes. Analysis of state law was necessary because "[T]he federal statute itself [18 U.S.C. § 2516(2)] requires our deference to Colorado law on the question of the validity of the wiretap order obtained in state court under state law." *United States v. McNulty,* 729 F.2d at 1266. The state-court wiretap order was held to be invalid under state law on the following basis: A wiretap order is only allowed for certain enumerated offenses. C.R.S. § 16–15–102(1)(a)(I)–(VIII). "Professional gambling", as defined by C.R.S. § 18–10–102(8), is one of the enumerated offenses. C.R.S. § 16–15–102(1)(a)(III). However, the statute also states that:

> Anything to the contrary notwithstanding, an ex parte order for wiretapping or eavesdropping may be issued only for a crime specified in this subsection (1) for which a felony penalty is authorized upon conviction.

C.R.S. § 16–15–102(1)(b). "Professional gambling" is only a felony if the person is a "repeating gambling offender". C.R.S. § 18–10–103(2). A "repeating gambling offender" is

> [A]ny person who is convicted of an offense under section 18–10–103(2) or sections 18–10–105 to 18–10–107 within five years after a previous misdemeanor conviction under these sections ... or at any time after a previous felony conviction under any of the mentioned sections.

C.R.S. 18–10–102(9). The court in *McNulty* reasoned that since a wiretap is only allowed for offenses for which felony penalties are authorized; and since a felony penalty is only authorized for the offense of "professional gambling" if the person is a "repeating gambling offender"; and since a "repeating gambling offender" is someone convicted within five years of a previous misdemeanor gambling conviction or anytime after a previous felony gambling conviction, a wiretap order is only allowed

under Colorado law when the named interceptee has *two* professional gambling convictions. Because none of the *McNulty* defendants was shown to have two such convictions, the evidence was suppressed. *United States v. McNulty,* 729 F.2d at 1266–1268.

The government agents and lawyers working in this case made every effort to avoid any possible taint from the *McNulty* investigation. None of the suppressed *McNulty* wiretap information was included in the wiretap application and affidavit submitted to Chief Judge Finesilver. Different agents were assigned to this investigation and different attorneys are prosecuting it. The defendants' attempt to impute knowledge of the *McNulty* wiretap application to the government agents and attorneys assigned to this case is unpersuasive. The government's decision to erect a "Chinese Wall" between the two investigations explains the failure to list the *McNulty* wiretap application in the subject application.

In *United States v. Donovan,* 429 U.S. 413, 97 S.Ct. 658, 50 L.Ed.2d 652 (1977), the Supreme Court held that violation of the statutory requirements in 18 U.S.C. §§ 2518(1)(b)(iv) and 2518(8)(d) did not require suppression of the evidence obtained by the interception. The Court repeated the view expressed in *U.S. v. Chavez,* 416 U.S. 562, 94 S.Ct. 1849, 40 L.Ed.2d 380 (1974), and *U.S. v. Giordano,* 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974), that statutory Title III violations are only "unlawful" when the violated provisions "... directly and substantially implement the congressional intention to limit the use of intercept procedures to those situations clearly calling for ... this extraordinary investigative device", *U.S. v. Giordano,* 416 U.S. at 527, 94 S.Ct. at 1832, or to provisions which play a "substantive role" in the regulatory scheme, *U.S. v. Chavez,* 416 U.S. at 578, 94 S.Ct. at 1857. The Court concluded:

> Although [§§ 2518(1)(b)(iv) and 2518(8)(d)] are undoubtedly important, we do not think that the failure to com-

ply fully with these provisions renders unlawful an intercept order that in all other respects satisfies the statutory requirements.

*U.S. v. Donovan,* 429 U.S. at 434, 97 S.Ct. at 671.

The listing of all prior wiretap applications as required by § 2518(1)(e) may or may not play a substantive role in obtaining judicial authorization for an interception. The issue is fact specific. The statute allows the issuing judge to approve an interception upon the findings that 1) there is probable cause to believe that an individual is, has been, or is about to become engaged in activities proscribed by § 2516; 2) there is probable cause to believe that communications concerning the offense will be obtained by the interception; 3) normal investigative procedures have failed, appear likely to fail, or are too dangerous to try; and 4) there is probable cause to believe that the targeted premises or facilities are being used in connection with the specified activities. 18 U.S.C. § 2518(3)(a)–(d). The fact that the same persons may have been subject to prior intrusions or that earlier applications were rejected by other courts may influence the decision on any or all of these questions.

It is clear to this court that the failure to list the *McNulty* application and consequent proceedings could have no relevance to Chief Judge Finesilver's determination of the adequacy of the showing made to him. The *McNulty* suppression order was based on a very restrictive reading of Colorado law. Inclusion of the information could have supported the government's application for this wiretap order.

There is no evidence of any intentional wrongdoing by the government. *See, United States v. Sullivan,* 586 F.Supp. 1314, 1323 (D.Mass.1984). The principal purpose of the exclusionary rule is to deter unlawful police conduct. When suppression will not serve this purpose, the contribution of the exclusionary rule to the effectuation of the Fourth Amendment is minimal as compared to the societal costs of applying the rule. *See, United States v.*

*Leon,* 468 U.S. 897, 907–908, 104 S.Ct. 3405, 3412, 82 L.Ed.2d 677 (1984), *Stone v. Powell,* 428 U.S. 465, 493–495, 96 S.Ct. 3037, 3051, 3052, 49 L.Ed.2d 1067, *reh'g denied,* 429 U.S. 874, 97 S.Ct. 197, 50 L.Ed.2d 158 (1976). This balancing approach dictates that the exclusionary rule should not be applied in this case since FBI Special Agent Dirkse made reasonable efforts to learn of any prior wiretap applications as to the named interceptees, and was unaware of the *McNulty* wiretap application.

In *United States v. Abramson,* 553 F.2d 1164 (8th Cir.), *cert. denied,* 433 U.S. 911, 97 S.Ct. 2979, 53 L.Ed.2d 1095 (1977), the government disclosed a prior wiretap but failed to disclose that it had been suppressed. The court found noncompliance with § 2518(1)(e), but held that "... the failure to disclose the fact of suppression of the 1970 wiretap did not detract from the sufficiency of the enumerated factors necessary to a judge's wiretap authorization and hence was not central or functional in guarding against unwarranted use of wiretapping or electronic surveillance." *United States v. Abramson,* 553 F.2d at 1170. *See also, United States v. Van Horn,* 789 F.2d 1492, 1499–1500 (11th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 190, 93 L.Ed.2d 123 (1986).

*United States v. Bellosi,* 501 F.2d 833 (D.C.Cir.1974), on which defendants rely, did order suppression for an intentional violation of § 2518(1)(e). The court held that § 2518(1)(e) was one of the "... clearly worded 'stringent conditions' with which a law enforcement agency must comply before conducting an interception of wire or oral communications." *United States v. Bellosi,* 501 F.2d at 840 (footnote omitted). However, *Bellosi*'s value on this issue is minimal, in light of the Supreme Court's subsequent decision in *Donovan.* Defendants' reliance on *United States v. Diltz,* 622 F.2d 476 (10th Cir.1980), is misplaced. In *Diltz* the court found that there was no violation of 18 U.S.C. § 2518(1)(b)(iv) because there was no probable cause to name the defendant as an interceptee.

## B. Failure to Serve Inventory

■ Defendant Daniel Mordecai argues for suppression on the ground that the government failed to serve him with an inventory as required by 18 U.S.C. § 2518(8)(d). Based on the evidence and arguments before it, this court is unable to decide whether Mr. Mordecai was served with an inventory. The government submitted a photocopy of a signed mail receipt form, Exhibit F to Government's Second Consolidated Response, but there is no proof that the signature is Mr. Mordecai's, or that it acknowledges receipt of the inventory. This dispute is irrelevant, since *Donovan* clearly held that suppression is not the remedy for noncompliance with § 2518(8)(d). Moreover, defendants' reliance on *State v. Dowdy*, 222 Kan. 118, 563 P.2d 425 (1977) is misplaced. *Dowdy* is a Kansas state court case involving the constitutionality of that state's eavesdropping act.

## C. Motion to Suppress Intercepted Communications and All Evidence Derived Therefrom for Failure to Comply with Immediate Sealing Requirements of 18 U.S.C. § 2518(8)(a)

■ The parties agree that four days passed between the expiration of Chief Judge Finesilver's order of November 16, 1984 authorizing wire interceptions and the sealing of the recordings made pursuant to that order. The defendants contend that the evidence seized in the intercepted communications should be suppressed because of that delay in the absence of a satisfactory explanation.

18 U.S.C. § 2518(8)(a) provides in pertinent part:

> Immediately upon the expiration of the period of the order ... [the] recordings shall be made available to the judge issuing such order and sealed under his directions.... The presence of the seal provided for by this subsection, or a satisfactory explanation for the absence thereof, shall be a prerequisite for the use or disclosure of the contents of any wire or oral communication or evidence

derived therefrom under subsection (3) of section 2517.

None of the cases cited by Mr. Burbridge found suppression the proper remedy for a § 2518(8)(a) violation. In *United States v. Vasquez*, 605 F.2d 1269, 1278–1280 (2d Cir.), *cert. denied*, 444 U.S. 981, 100 S.Ct. 484, 62 L.Ed.2d 408 (1979), the court wrote that any delay beyond one or two days requires an explanation, but did not require suppression. *United States v. Falcone*, 505 F.2d 478, 483–484 (3rd Cir.1974), *cert. denied*, 420 U.S. 955, 95 S.Ct. 1339, 43 L.Ed.2d 432 (1975), held that the sealing requirement was not intended to limit the use of interception procedures, and therefore the failure promptly to seal does not render a communication "unlawfully intercepted" and does not require suppression under the statute. *See also, United States v. Diana*, 605 F.2d 1307, 1315–1316 (4th Cir.1979), *cert. denied*, 444 U.S. 1102, 100 S.Ct. 1067, 62 L.Ed.2d 787 (1980)(fact that defendant produced no evidence that tapes were altered or tampered with was important factor in decision to admit evidence).

Although the Tenth Circuit has not ruled on this question, it has drawn a distinction between "... procedures governing *the interception* of wiretap evidence and those governing *the preservation* of such evidence after interception for trial...." *United States v. McNulty*, 729 F.2d at 1265 (emphasis in original). This distinction supports the conclusion that suppression is not the proper remedy for the failure immediately to seal intercepted recordings, at least where the government offers a satisfactory explanation.

The government's explanation for the delay in this case appears in the affidavit of Robert Mydans, Exhibit C to Government's Second Consolidated Response to Defendants' Motions. Mr. Mydans explained that during 1984 he was assigned to a Department of Justice field office in Kansas City where he was on Saturday, December 15, 1984, when the wiretap order in this case expired. He states that he prepared the documents necessary to complete the sealing on Monday and Tuesday, December 17

and 18, 1984, then flew to Denver, where the sealing took place before Chief Judge Finesilver on Wednesday December 19, 1984. Mr. Mydans claims the multiple interceptions in this case required him to take "extra precautions" to be sure the documentation was in order prior to sealing. Mydans Affidavit at ¶¶ 3–7.

This court is not unconcerned by the four day delay in sealing. The statute requires that the recordings be sealed "immediately." Nevertheless, courts have excused much longer delays than this when the government could offer a satisfactory explanation. *See, e.g., United States v. Diana*, 605 F.2d at 1315 (39 day delay excused), *United States v. Lawson*, 545 F.2d 557, 564 (7th Cir.1975) (evidence admissible despite 57 day delay where defendants did not question integrity of tapes). The explanation offered here is satisfactory.

### D. Motions to Suppress Based on Improper Unsealing of Intercepted Recordings

■ The defendants moved to suppress the tape recordings of intercepted wire communications on the ground that they were improperly unsealed. Shortly after the February 5, 1986 indictment in this case, the government applied for an order unsealing the tapes, because the tapes were necessary "... to prepare for trial and provide the required discovery to the defendants." Exhibit D to Government's Second Consolidated Response, at ¶ 2. Chief Judge Finesilver granted this request by order of March 5, 1986. The order called for the boxes of tapes to be unsealed by FBI agents in the court's presence, and required the unsealed reels to remain in FBI custody.

§ 2518(8)(a), on which defendants rely, does not forbid unsealing intercepted wire communications. Defendants offer no case supporting their argument. They do not suggest that the unsealing failed to comply with the court order. Moreover, one stated purpose for unsealing the tapes was to allow the defendants to examine the original tapes for evidence of tampering or alteration. There is no merit to this motion.

### E. Motion to Suppress Intercepted Communications and All Fruits Thereof

■ The defendants contend that the wiretap application was not authorized by the Department of Justice. They attack the continued validity of Attorney General Order No. 931–81, signed by then Attorney General Benjamin Civiletti on January 19, 1981. Order No. 931–81 specially designated the Assistant Attorney General in charge of the Criminal Division of the Justice Department to authorize applications for interception of wire and oral communications. *See*, 18 U.S.C. § 2516(1). The authorization to apply for interception in this case was signed by Stephen S. Trott, Assistant Attorney General in charge of the Criminal Division. In his memorandum authorizing the application, Mr. Trott stated that his power to authorize the application came from Order No. 931–81. The defendants argue that Order No. 931–81 expired a reasonable time after Mr. Civiletti left office on January 20, 1981.

Order 931–81 empowered the Assistant Attorney General in charge of the Criminal Division to authorize wiretap applications. The clear weight of the law holds that "... designation by job title rather than the name of the individual currently holding the position meets the requirements of the Act." *United States v. Bynum*, 763 F.2d 474, 475 (1st Cir.1985). Designation by job title does not undermine the statutory intent to limit the power to authorize wiretaps to those "responsive to the political process" and "accountable to the courts and the public for their actions". *United States v. Giordano*, 416 U.S. at 520, 522, fn 10, 94 S.Ct. at 1829, fn 10. *See also, United States v. Kerr*, 711 F.2d 149, 151 (10th Cir.1983), *United States v. Orozco*, 630 F.Supp. 1418, 1533 (S.D.Cal.1986). Moreover, a wiretap authorization order is presumptively valid, *United States v. Newman*, 733 F.2d 1395, 1398 (10th Cir.1984), and a designation which contains no expiration date continues in effect until revoked, *United States v. Lawson*, 780 F.2d 535, 539 (6th Cir.1985), *United States v. Bynum*,

763 F.2d at 475, *United States v. Kerr*, 711 F.2d at 150–151.

### F. Bernard Jansen's § 2518(1)(b)(iv) Argument

■ Defendant Bernard Jansen contends that there was probable cause to name him as an interceptee, and that the failure to do so is a basis for suppression of the wiretap evidence against him. In *Donovan*, the Supreme Court held that "... a wiretap application must name an individual if the Government has probable cause to believe that the individual is engaged in the criminal activity under investigation and expects to intercept the individual's conversations over the target telephone." *United States v. Donovan*, 429 U.S. at 428, 97 S.Ct. at 668. However, the Court in *Donovan* also held that the failure to meet this requirement does not require suppression of the evidence produced. *Id.* at 435–436, 97 S.Ct. at 671–672. It is therefore unnecessary to decide whether probable cause existed to list Mr. Jansen as an interceptee. Even if it did, the wiretap evidence against him would not be suppressed on this ground. *Accord: United States v. Santarpio*, 560 F.2d 448, 454, fn. 5 (1st Cir.), *cert. denied*, 434 U.S. 984, 98 S.Ct. 609, 54 L.Ed.2d 478 (1977); *United States v. Sklaroff*, 552 F.2d 1156, 1158–1159 (5th Cir.), *reh'g denied*, 555 F.2d 1391 (1977), *cert. denied*, 434 U.S. 1009, 98 S.Ct. 718, 54 L.Ed.2d 751 (1978).

### G. Lack of Probable Cause

■ Defendants move to suppress the contents of the intercepted communications on the ground that the application for interception and supporting affidavit fail to establish probable cause for the findings required by 18 U.S.C. § 2518(3)(a)–(d).

Section 2518(3) authorizes the judge to approve a wire or oral interception upon the findings that:

(a) there is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in section 2516 of this chapter;

(b) there is probable cause for belief that particular communications concerning that offense will be obtained through such interception;

(c) normal investigative procedures have been tried and failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous;

(d) there is probable cause for belief that the facilities from which, or the place where, the wire or oral communications are to be intercepted are being used, or are about to be used, in connection with the commission of such offense, or are leased to, listed in the name of, or commonly used by such person.

The standard for evaluating a finding of probable cause is the totality of the circumstances test of *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The determinations of Chief Judge Finesilver in this case are entitled to deference. *United States v. Belcastro*, 84–CR–290 slip op. at 6 (D.Colo. Feb. 5, 1985) (Judge Moore) [Available on WESTLAW, DCTU database]. Special Agent Dirkse's affidavit contained information gathered from confidential informants, physical surveillance, pen registers, and subscriber and toll record information. Taken as a whole, this court finds that the affidavit supports a finding of probable cause as to all the statutory elements.

Probable cause to believe a gambling business existed is supported by physical surveillance of certain key defendants, confidential informant information, and pen register records showing hundreds of telephone calls to sports score and line information numbers. The belief that communications concerning a gambling operation would be intercepted is supported by pen register records and the affiant's experience that "... in a bookmaking business of any size, the operation usually utilizes telephones for the purpose of conveying gambling information, i.e., bets from bettors to the bookmakers." Government Exhibit 1–B at ¶ 4. This kind of experiential conclusion is fully consistent with the probable cause analysis. *See, Illinois v. Gates*, 462

U.S. at 230–232, 103 S.Ct. at 2328–2329. Pen register records, confidential informant information and physical surveillance also support Chief Judge Finesilver's probable cause finding that the phones to be intercepted were being used in connection with the offense.

■ The defendants attack the wiretap order on the contention that the affidavit does not include the full and complete statement required by § 2518(1)(c) necessary to the judge's finding under § 2518(3)(c). This argument has no merit. Paragraphs 59–65 all speak to the need for wire interceptions in lieu of normal investigative procedures. Paragraph 59 states that the confidential informants would not be willing to testify out of fear of harm, and that revealing their identities would interfere with other ongoing investigations. Paragraph 60 states that physical surveillance proved difficult because the subjects are extremely conscious of being watched and because the location of certain key individuals' homes makes it "impossible" to watch these homes without being spotted. *See also*, paragraphs 23, 26, 30. Paragraph 60 also states that infiltration would be unlikely to succeed, and in any case would not identify all participants due to the nature of the alleged conspiracy. Paragraphs 62–63 state that because bookmakers do not, in the affiant's experience, keep permanent records, searches and seizures are unlikely to net sufficient evidence to prove the elements of the crimes under investigation.

In *United States v. Johnson*, 645 F.2d 865, (10th Cir.), *cert. denied*, 454 U.S. 866, 102 S.Ct. 329, 70 L.Ed.2d 168 (1981), the court held that:

> The provisions of 18 U.S.C. § 2518(1)(c) are not designed to force the government to exhaust all other conceivable investigative procedures before resorting to wiretapping. Rather, that section of the statute serves to insure that wiretapping is not used in situations where traditional investigative techniques would suffice to expose the crime.

*United States v. Johnson*, 645 F.2d at 867. *See also, United States v. Grabow*, 621 F.Supp. at 794–795.

■ The defendants further maintain that the wiretap evidence should be suppressed because the affidavit fails to establish probable cause that "five or more persons" were involved in an illegal gambling business which remained in substantially continuous operation for over thirty days or grossed two thousand dollars in a single day. 18 U.S.C. § 1955.

In *United States v. Smaldone*, 485 F.2d 1333 (10th Cir.1973), *cert. denied*, 416 U.S. 936, 94 S.Ct. 1934, 40 L.Ed.2d 286 *reh'g denied*, 417 U.S. 926, 94 S.Ct. 2635, 41 L.Ed.2d 230 (1974), the court held:

> It was not essential, contrary to appellants' assertions, to establish that each conductor was involved in the gambling business for more than thirty days or generated at least $2000 gross revenue in a single day. These requirements refer to the gambling operation and not to individuals. And the five individual participants necessary to sustain a federal conviction need not carry on or cause the entire gambling operation to function.

*United States v. Smaldone*, 485 F.2d at 1351 (citations omitted).

Physical surveillance revealed that Aaron Mosko "varied his route to work almost daily" and "customarily drives through parking lots, shopping centers, and alleys without stopping." Government Exhibit 1–B at ¶¶ 26–27. Physical surveillance also revealed Mr. Mosko meeting and passing envelopes to Phil Pinelli, David Pinelli and Bernard Jansen. *Id.* at ¶ 31. Bernard Jansen in turn was observed making numerous short stops at different locations. Pen register records show telephone calls from Barry Cohen to Aaron Mosko. *Id.* at ¶ 52(m). Pen register records also show that calls to Aaron Mosko are sometimes forwarded to the telephone of Martin Mosko. *Id.* at ¶¶ 53, 69. Confidential informant information links Aaron Mosko to non-defendants Tito Soto, Richard Schultz, Benjamin Montoya, Allen Reisman, and William Young, as well as to defendant

Thomas Gottone. *Id.* at ¶¶ 14, 15, 18, 19(a)(b) & (c), 20(a). *See, United States v. Quarry,* 576 F.2d 830, 833 (10th Cir.1978) (Congress intended to include all participants in an illegal gambling business within the definition of "persons" in § 1955(b)(1)(ii), irrespective of their status as defendants).

Taken as a whole, *Illinois v. Gates, supra,* this court finds that the affidavit shows probable cause to believe that at least five persons were involved in an illegal gambling operation. This probable cause standard should not be confused with the requirement that a conviction be based on guilt beyond a reasonable doubt. *See, United States v. Dorfman,* 542 F.Supp. 345, 359 (N.D.Ill.1982), *aff'd sub nom. United States v. Williams,* 737 F.2d 594 (7th Cir.1984).

The defendants further argue that Aaron Mosko is only linked to Benjamin Montoya, Allen Reisman, William Young and Thomas Gottone by allegations of lay-off bets. Citing *United States v. Thomas,* 508 F.2d 1200 (8th Cir.), *cert. denied,* 421 U.S. 947, 95 S.Ct. 1677, 44 L.Ed.2d 100 (1975), the defendants contend that lay-off betting must be substantial and systematic to fall within § 1955. *Thomas,* however, merely states that "... isolated and casual lay off bets and an occasional exchange of line information may not be sufficient to establish that one bookmaker is conducting or financing the business of a second bookmaker." *United States v. Thomas,* 508 F.2d at 1206. In *United States v. Morris,* 612 F.2d 483 (10th Cir.1979), this circuit wrote:

> [I]t is not necessary that lay-off betting be a two-way street in order to bring two bookmakers together in an illegal gambling business. Thus, without being financially interested in the business in the sense of participating directly in its profits, a bookmaker may still place lay-off bets with others which makes them conductors of his business as insurers.

*United States v. Morris,* 612 F.2d at 493 (citations omitted).

Defendant Robert Sheehan moves to suppress the contents of intercepted wire communications on the ground that the wiretap affidavit fails to support a finding of probable cause that he violated any of the offenses proscribed by 18 U.S.C. § 2516. Since Mr. Sheehan was not mentioned in the affidavit, either as an interceptee or a committor, it was not necessary to find probable cause as to him.

### H. 18 U.S.C. §§ 2518(1)(b), 2518(4), and 2518(5)

The defendants have not shown a violation of any of these statutory requirements. The application meets the requirements of 18 U.S.C. § 2518(1)(b). The order authorizing interception satisfies 18 U.S.C. § 2518(4). There is no evidence of a violation of the requirement that the government minimize the interception of communications not subject to interception. 18 U.S.C. § 2518(5). Even if a violation of one of these sections were established, suppression would not be the automatic remedy under *Donovan.*

### Franks v. Delaware

The defendants request further evidentiary inquiry under *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), and move for leave to file *Franks* submissions. They assert that 1) Agent Dirkse's affidavit in support of the wiretap application contains material misstatements and omissions, made intentionally or with reckless disregard for the truth, the deletion of which disestablishes probable cause; and 2) "the 'full and complete' statement required by § 2518(1)(c) which attributes to certain confidential informants their refusal to testify or otherwise be disclosed for fear of reprisals is inaccurate and misleading." Motion to Suppress Contents of Intercepted Wire Communications at ¶¶ 5-6.

The defendants also cite *Franks* for the argument that paragraph 9(e) of Special Agent Dirkse's affidavit in support of the wiretap application should be stricken. That paragraph informed that this investigation coupled with a 1977 state investiga-

tion of the Pinelli brothers led Agent John Dore of the Denver Police Department to believe that Aaron Mosko "is still exchanging layoff bets with Tom Gottone and Phil Pinelli." The paragraph failed to state that the 1977 state investigation led to an indictment but ended in a court-ordered judgment of acquittal at the close of the state's evidence.

In *Franks,* the Supreme Court held that the Fourth Amendment requires a hearing if the defendant makes a "... substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause...." *Franks v. Delaware,* 438 U.S. at 155–156, 98 S.Ct. at 2676. If at the hearing the defendant establishes by a preponderance of the evidence that there was perjury or a reckless disregard of the truth, and if the affidavit without the false material cannot support a finding of probable cause, the warrant must be voided. The parties do not dispute the applicability of the *Franks* doctrine to the order authorizing electronic surveillance.

The Court in *Franks* established the following guidelines for deciding whether a hearing is warranted:

> [T]he challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient.... Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there re-

mains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.

*Franks v. Delaware,* 438 U.S. at 171–172, 98 S.Ct. at 2684.

The defendants have not made the "substantial preliminary showing" necessary to gain a *Franks* hearing. The fact that a judge in 1978 found that the prosecution had failed to submit adequate evidence to support a jury verdict of guilty has little bearing on the probable cause finding challenged here. Inserting the omitted information into paragraph 9(e) would not affect the finding of probable cause.

Moreover, paragraph 9(e) states that Agent Dore's beliefs about Aaron Mosko's gambling activities are based on *this* investigation as well as the 1977 investigation, and the government's failure to convict Aaron Mosko in the 1978 state prosecution arising out of the 1977 state investigation is suggested by the statement in paragraph 8 of the wiretap affidavit that Aaron Mosko has no known felony convictions.

### Probable Cause—Searches

Having concluded that the wiretaps in this case were lawfully authorized, this court rejects all contentions that the evidence obtained in the consequent searches must be suppressed as the fruit of the poisonous tree. Furthermore, this court finds and concludes that the search warrants signed by Chief Judge Finesilver for the residences, businesses, persons and automobiles of the defendants were fully supported by probable cause. Special Agent Dirkse's affidavit supporting the warrant applications provides a substantial basis for the conclusion that under the totality of the circumstances a search would reveal evidence of criminal activity. *Illinois v. Gates, supra.* Defendants' other attacks on the search warrants and supporting affidavit must also fail. The information in the affidavit was not stale. It was adequately based on the affiant's firsthand knowledge. Sufficient indicia of trustworthiness were provided for the confidential informants. The warrants were

not general or exploratory. The searches did not exceed the scope of the warrants. The failure to tender the search warrant contemporaneously with the search, even if established, does not require suppression of evidence obtained in that search.

## Motions to Suppress Evidence Obtained as a Consequence of Intensified Investigation Subsequent to Title III Surveillance

The defendants contend that because the wire interception was unlawful, any evidence subsequently obtained was also unlawful. Citing *United States v. Schipani*, 414 F.2d 1262 (2d Cir.1969), *cert. denied*, 397 U.S. 922, 90 S.Ct. 902, 25 L.Ed.2d 102 (1970), they argue that this basis for suppression should extend to witnesses discovered by unlawful means. It is this court's view that the wire interceptions and searches in this case were lawful. Therefore, these motions are without merit.

### Ronald Pitts' Motion to Dismiss or to Suppress

 Defendant Ronald Pitts moves to dismiss or suppress on the grounds that federal and local law enforcement agents exceeded the scope of their search warrant by answering Mr. Pitts' telephone during the search of his home. The motion does not otherwise challenge the validity of the search warrant.

Mr. Pitts correctly notes that the warrant in question, Government Exhibit 2–N, makes no mention of his telephone in its list of items to be seized. However, he fails to offer any case where this fact carried any legal significance. Numerous cases have held contrary to the defendant's position.

In *United States v. Gallo*, 659 F.2d 110 (9th Cir.1981), the defendant attacked the trial court's decision to admit evidence obtained by answering the defendant's phone while lawfully on the premises pursuant to a warrant to search for evidence of bookmaking activities. The appellate court affirmed, reasoning that because the telephone is a likely source of evidence of a bookmaking operation, it was reasonably related to the purposes of the search. *United States v. Gallo*, 659 F.2d at 114.

In *United States v. Passarella*, 788 F.2d 377 (6th Cir.1986), the police answered the defendant's telephone while lawfully in his home pursuant to an arrest warrant. The evidence gathered by answering the telephone was used to convict the defendant at trial. On appeal, the court held that there is no expectation of privacy in the words uttered by another. *United States v. Passarella*, 788 F.2d at 379–380. *See also*, *United States v. Kane*, 450 F.2d 77, 85 (5th Cir.1971), *cert. denied*, 405 U.S. 934, 92 S.Ct. 954, 30 L.Ed.2d 810 (1972) (Evidence not described in valid search warrant but having nexus with crime under investigation may be seized during search).

Mr. Pitts attempts to distinguish these cases on two grounds: first, that in this case the government knew the defendant had a telephone yet failed to include it in the warrant, and second, that the defendant's lawyer allegedly requested that the agents stop answering the phone. Even if true, these facts are insufficient to distinguish the cited cases.

Upon the foregoing, it is

ORDERED, the defendants' motions to suppress are denied, and it is

FURTHER ORDERED, a status conference on this matter, at which the defendants need not be present, will be held on Friday, March 6, 1987, at 1:00 p.m., in Courtroom A, Second Floor, Post Office Building, 18th and Stout Streets (use 19th Street Entrance), Denver, Colorado.